(No. 27120.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CASIMER BOTULINSKI, Plaintiff in Error.

*Opinion filed September 21, 1943.*

SMIETANKA, CONLON & NOWAK, (JOSEPH G. SMIE-TANKA, and ROBERT P. BURKHALTER, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and ALEXANDER J. NAPOLI, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

The plaintiff in error was tried in the criminal court of Cook county under an indictment charging him with the crime of robbery with a gun. A jury found him guilty and motions for a new trial and in arrest of judgment were overruled. Judgment was then entered upon the verdict and he was sentenced to serve a term of one year to life in the Illinois State Penitentiary. He has sued out a writ of error to review this judgment. The errors mainly relied upon for reversal are as follows: (1) the evidence is not sufficient to sustain the judgment of conviction; (2) the defendant was not properly nor sufficiently identified; (3) evidence of the commission of another crime was improperly admitted; (4) the defendant was wrongfully detained. Because of the errors assigned it becomes necessary to review the evidence.

The proof shows that two men in a tan Packard four-door trunk sedan drove into a filling station located at 2823 North Thatcher avenue, River Grove, Illinois, at about 1:30 in the morning of October 31, 1942. The attendant, Jack Kleinow, and his friend, George Lenzey, both 19 years of age, were in the office of said station, alone. The flood lights of the station were not on, but there were lights on the gasoline pumps and there was a light burning in the office of the station. The automobile stopped and its horn was sounded. Kleinow went out to service said automobile. He stood by the gasoline pump, which pump was

the furthest pump from the station building, and asked the driver, "how many?" At that time the driver of the car said, "this is a stick-up, come on with the green stuff." He also showed a gun, according to the witness. The witness stated that he gave the driver all the change he had, amounting to about $15. When he dropped some of the change and went down to pick it up, the other occupant of the car walked around the back of the car and stuck a gun in his back. This man then told him, "come on with all of it now." The driver did not get out of the car at that time. Kleinow and the passenger then went into the station and walked into the back room where the safes were situated. Kleinow then opened the safe and gave him the contents thereof. This gunman then said, "O.K., nothing is going to happen, just turn around and face the wall." Kleinow remained in the back room until he heard the gunman go out, after which he got into his car and tried to chase the bandit car. Altogether the sum of $70.68 was taken.

At the time the gunman and Kleinow entered the station Lenzey was seated on a chair by the desk. Lenzey's story is as follows: When the car came in, Kleinow went out and shortly thereafter he and the gunman came in and went into the back room. Shortly after the two men went in the back room another man came in and pulled out a gun and asked for the "green stuff." Upon being asked for the "green stuff" Lenzey pulled out $2 and showed it to the gunman and the gunman said, "stick it back in your pocket." This gunman then told Lenzey to turn and face the wall and Lenzey obeyed. Then Lenzey heard the other gunman come out of the back room and one of them said, "here comes the heat, let's go."

Kleinow did not identify the defendant in any manner. Lenzey did identify the defendant as the man who threatened him with the gun. This is the only identification made by anyone.

On the morning of October 31, at about 7:30 o'clock, Mrs. Nada Belousek, who operated a small sandwich shop at 7123 West Grand avenue, noticed a delapidated 1936 Ford parked in the street in front of her establishment. According to her testimony she became perturbed over its presence there and at about 9:00 A. M. Ben Ranallo came into her shop for a cup of coffee and a roll and she directed his attention to this automobile. Their attention was attracted by the clang of a trolley-car bell, and when they looked out toward the street, they saw a Checker taxicab parked in the street near the Ford automobile and saw a man get out of the taxicab and drop something, bend down and pick it up and then get into the Ford automobile and drive away. Ranallo wrote down the license number of the Ford automobile and after the man drove away they contacted the police. These two witnesses testified, but neither of them could identify the defendant as the man who got out of the taxi and neither of them could positively state that the object which was dropped was a gun, although the State's Attorney endeavored to have them so state. The police, upon being informed of this mysterious car, checked the license number and found that it was registered in the name of the defendant's mother.

Nick Lenzer, a roofing salesman, who lives at 7123 West Grand avenue, the same street address where the sandwich shop is situated, testified that he owned a 1939 Packard four-door trunk sedan and that the color thereof was tan or khaki. Lenzer testified that at about 11:30 P. M. on October 30, he left his car in the alley back of the garage at the West Grand avenue address where he resides, and that when he went out of the house three quarters of an hour later said automobile was gone. He states that he next saw it about three days later when the police notified him that they had found it, and at that time it had been driven not over 100 miles.

The evidence for the defendant consisted of an alibi, and showed that in the late afternoon of October 30 he called the parole agent and asked for late permission for October 30 and 31, the same being Friday and Saturday nights. Late permission was denied him for both nights, but was given him for Friday night. His mother, his sister and himself all testified that they lived at 7177 Irving Park and that shortly before 8:00 o'clock P. M. the sister drove the family car, in which the mother and brother were riding, to St. Hyacinth's Church, at which place the mother and brother got out and attended a church service. The sister then states that she proceeded to go to a movie at the Mont Claire Theater on Grand avenue, about two doors from 7123 West Grand avenue, and that she parked the automobile near the sandwich shop and went to the show. When she got out of the show about midnight she could not get the car started and she left the car there and went home on the streetcar. The mother and the defendant testified that they left the church shortly after 9:00 P. M.; that they walked to Milwaukee avenue and Central Park and took the Milwaukee avenue streetcar, arriving home shortly after 10:00 o'clock; that the defendant read the paper for a short time and went to bed about 11:00 o'clock P. M. and that he did not leave the house until the next morning shortly before 9:00 o'clock, when he left for the parole office. The sister states that upon her return from the movie at about 1:00 A. M. the defendant was in bed. It is further shown by the evidence that the mother, brother and sister all slept in the same room, the mother and sister using one bed and the brother using the other.

The plaintiff in error was on parole at the time of his arrest; he had been found guilty on February 14, 1933, of robbery and had been admitted to probation; on February 13, 1934, the said probation was revoked and he had been sentenced to the State Penitentiary at Joliet, from

which he was on parole. The evidence shows that since being paroled he had been regularly employed, missing only six days from work up to the time of his arrest. He was prohibited from driving automobiles as were all parolees. The evidence further shows that his mother owns the property in which they live; that she operated a small store and restaurant there and has resided in that property for the past seventeen years. She is a widow. The sister holds a position as office manager for J. B. Simpson Company, merchant tailors, and has been employed by the clothing industry for several years.

The evidence shows that defendant was employed as a precision metal sawyer and his minimum salary was $37.40 per week, which salary he delivered to his mother and received his spending money from her. He was employed by the Hills-McKenna Foundry, who are engaged 100 per cent in war work. His parole officer testified as to his conduct and it appears that he was getting along with his parole very satisfactorily. The assistant supervisor of the foundry testified that the defendant had worked there for about six months and had performed satisfactorily.

The evidence shows that the defendant was not arrested until November 5, 1942, but that upon his arrest he was confined to jail until November 12, 1942, without any charge being placed against him. During all of this time he was taken before many show-ups, including all of the witnesses who testified, but that the only person identifying him was Lenzey.

The police contacted the defendant's sister on the morning of October 31 at the family home and were told that he was at the parole office and that he would be back about noon. They came about noon but the defendant was not there, but he did arrive at approximately 1:00 P. M. The investigation continued and on November 2 one police officer did contact the defendant at his home and talked with him. On November 5 two police officers contacted

the defendant at his place of work, and at that time the defendant insisted upon calling up the parole office to see if they had any authority to arrest him. Upon calling the parole office he was evidently advised that the parole office knew nothing of the charges and under the pretense of going to clean up, he left the factory through the back door and reported immediately to the parole office. When he did not come back the policemen who were waiting at the plant, called the parole office and told the parole office to hold him for them, should he come there.

It will be seen that the only direct evidence of the defendant's guilt is the testimony of Lenzey. There is circumstantial evidence which indicates that a car was stolen, which car was undoubtedly used in this robbery, and that the Botulinski automobile was found about one block from the place where this stolen car had been parked. However, the alibi in this case being very convincing and destroying the incriminating character of the circumstantial evidence, the State must rest its entire case upon the identification by Lenzey.

This court has held that it is its duty to carefully review the evidence in a criminal case, and if it is not sufficient to remove any reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty, the conviction will be reversed. (*People* v. *Kazmierczyk,* 357 Ill. 592; *People* v. *Serrielle,* 354 Ill. 182; *People* v. *Nemes,* 347 Ill. 268; *People* v. *Fitzgibbons,* 343 Ill. 69.) This court has further held that the burden rests upon the People not only to prove beyond a reasonable doubt the commission of the crime charged, but also to establish by the same degree of proof the perpetration of the crime by the person accused. *People* v. *Grove,* 356 Ill. 246.

A conviction cannot be said to be sustained by evidence beyond a reasonable doubt if the testimony of the witnesses shows that their identification of the person accused was

vague, doubtful and uncertain. *People* v. *Christocakos,* 357 Ill. 599; *People* v. *Fiorita,* 339 Ill. 78.

We have also held that direct evidence either of identification or of any other fact is not required in order to sustain a conviction. However, the court has said that where circumstantial evidence is relied upon the facts and circumstances proved must be sufficient to establish the guilt of the person accused to a moral certainty and to the exclusion of every other reasonable hypothesis. *People* v. *Christocakos,* 357 Ill. 599; *People* v. *Rischo,* 262 Ill. 596; *People* v. *York,* 262 Ill. 620.

Reviewing the evidence in this case, it appears that the State has not established beyond a reasonable doubt that the defendant drove the Ford automobile to the sandwich shop and then either drove or rode in the tan Packard car to the scene of the crime. The only direct evidence that the State has introduced as to the defendant's participation in the crime is the identification by Lenzey. This evidence does not establish his participation in the crime under the tests as prescribed by the rulings of this court.

Lenzey testified that he identified the defendant at a show-up at the Cragin police station on November 6, 1942, a week after the robbery. He states that the only persons present at the time were himself, Jack Kleinow, the filling-station attendant, three police officers and the defendant. It appears that the defendant was the only person at the show-up for the witness to view. We have held that where one accused of a crime is brought alone before the witness for the purpose of identification, such identification is not entitled to the same weight and credibility as where the witness picks out the accused from a number of persons brought before the witness. *People* v. *Deal,* 357 Ill. 634; *People* v. *Sanders,* 357 Ill. 610.

In the *Sanders case,* regarding the identification of the accused, we stated, "The proper way is to have the wit-

ness, without suggestion from any officers or any interested persons, pick out the guilty party from a number of persons unknown to the witness." This rule has also been followed in *People* v. *Crane,* 302 Ill. 217, *People* v. *Martin,* 304 Ill. 494, and *People* v. *De Suno,* 354 Ill. 387.

Kleinow, who first saw the robber and who was first threatened by him, positively could not identify Botulinski. Neither could the witness Belousek, nor the witness Ranallo. The witness Lenzey states that he remembers the defendant particularly because of the manner in which he talked and used his mouth. In the arguments to the jury, the State's Attorney made considerable mention of this fact, but it would appear that, if there were any distinguishing features about the defendant's face, his mouth or his voice, the witness Kleinow would have been able to make a better attempt at identification than he did.

The defendant has argued that he was wrongfully detained for an unreasonable length of time without a charge being placed against him and that he was not served with a *capias.* This court does not approve of retaining people in custody without placing a charge against them, but in the view we take of this case it is not necessary to pass upon that question in arriving at a conclusion.

It has also been urged that counsel for the People conducted himself improperly. The assistant State's Attorney conducting the trial did use leading questions in his direct examination, but counsel for defendant on several occasions made no objection thereto. By the use of these leading questions and by a long and vigorous cross-examination of the defendant wherein much innuendo was used, the jury might possibly have been swayed to a certain extent, but counsel for defendant did not halt this practice by making objections as often as he could have done. Regardless of this failure of defendant's counsel to make objections, it was the duty of the State's Attorney to conduct his examination fairly.

The record further shows that at the beginning of the trial the assistant State's Attorney conducting the prosecution suggested that all witnesses be excluded from the court room, and the court so ordered. Andrew Schoenberger, another assistant State's Attorney, sat in the court room during the trial, and was called as a witness on rebuttal and testified to an extensive conversation he had had with the defendant after his arrest. We think this avoidance of the rule was inexcusable.

A careful review of the evidence leads us to believe that the identification of the defendant as one of the robbers at the filling station was not established beyond a reasonable doubt.

The judgment of the criminal court of Cook county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*