(No. 37799.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT ALBON GRAYSON, Plaintiff in Error.

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 25, 1963.*

R. Eugene Pincham, Charles B. Evins, and Glenn C. Fowlkes, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and Matthew J. Moran, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Robert Grayson, referred to herein as the defendant, was tried in the criminal court of Cook County by the court without a jury and convicted of the crime of unlawful possession of narcotic drugs, for which he was sentenced to the penitentiary for a term of not less than two nor more than three years. A writ of error has been issued to review the judgment of conviction.

The defendant's first contention is that the evidence was insufficient to establish his guilt beyond a reasonable doubt, and a detailed analysis of the evidence is therefore required. William Jackson, a Federal narcotics agent, testi-

fied that on July 28, 1961, he saw the defendant arrive at the Pershing Hotel in an automobile and enter the hotel. At about 5:00 P.M., the defendant and two other men left the hotel, entered the defendant's car, and drove away.

Another Federal agent, Vernon Meyer, testified to substantially the same facts. He went on to testify that when the defendant drove away from the hotel he and another agent followed the defendant's car. A few blocks from the hotel they drove alongside the defendant's car, identified themselves as Federal agents, and ordered the defendant to pull over to the curb. At that time the defendant was driving and the other two men were seated in the rear seat. The Federal agents pulled their car in front of the defendant's car and Meyer got out and walked over to the defendant's car. As he was approaching the defendant's car Meyer observed another agent, William Olivanti, pick up a brown paper bag which was on the terrace near the street on the driver's side of the defendant's car. It was later established that this paper bag contained marijuana. On cross-examination Meyer explained that agent Olivanti and another agent, Stephen Hnatt, were in a car immediately behind the Meyer car and that they had followed the defendant and Meyer from the hotel. He testified on cross-examination that when Olivanti picked up the package he opened it and inspected it and then said, "I have the marihuana," or something like that. Meyer testified that he ordered the defendant out of the car and searched him but found nothing on his person. He asked the defendant if he knew anything about the package that Olivanti had picked up and the defendant denied having had possession of it. He also testified that the other two men in the defendant's car, Marshall Jackson and Sylvester Bush, were asked if they had any knowledge of the marijuana and they both denied any knowledge of it. So far as Meyer recalled, none of the other agents asked any questions at that time. It was brought out on cross-examination that Meyer signed complaints against

Jackson and Bush charging them with possession of narcotics. He explained on redirect examination that since these men were in the company of the defendant he filed the complaint to bring it to the attention of the court since he felt that the court, rather than the agents, should decide whether all three men should be held.

Olivanti testified that he and Hnatt followed the Meyer car from the hotel in a car driven by Hnatt. After the Meyer car pulled in front of the defendant's car Olivanti saw the defendant throw a paper bag out of the window of his car. As soon as Olivanti's car stopped he got out and retrieved the paper bag. He testified that after he examined the package he said that it was marijuana. He did not talk to the defendant at that time and did not hear Meyer question the defendant or the other men. He testified that after the defendant and Bush and Jackson were taken to the narcotics bureau, all of them were questioned and they all denied knowledge of the narcotics.

Hnatt repeated the testimony with regard to the pursuit of the defendant and testified that he saw the defendant throw the package to the ground. In response to further questioning on direct examination he stated that he first saw the package in the air and did not see it before it was in the air. Counsel for the defendant moved that the witness's statement that he saw the defendant throw a package be stricken in view of his statement that he first saw the package in the air. However, the court refused to strike this statement and Hnatt went on to testify that he saw the package leave the defendant's hand. On cross-examination he said that he saw the package just about simultaneously with the stopping of the defendant's car. He testified that his view of the defendant was obstructed by one of the passengers in the rear seat of the defendant's car. However, he could see the defendant's arm out the window of the car.

For the defense there were admitted in evidence copies of the complaints signed by Meyer charging Jackson and

Bush with possession of narcotics. The only other evidence for the defendant was the testimony of the defendant himself. He testified that shortly before 3 :oo P.M. on the day in question, Jackson telephoned him and asked if he could come to the defendant's house to see him. The defendant told him to come ahead, and shortly thereafter Jackson, Bush and another man came to the defendant's house where they stayed for about 15 minutes. They left the house in the defendant's car and when they got to the Pershing Hotel, Jackson asked the defendant if he would drop him off there for a few minutes. According to the defendant he, Jackson, Bush and the other man all went into the hotel and the defendant went into the bar by himself where he stayed for a few minutes. Jackson and Bush joined him shortly thereafter and the three men got into the defendant's car and drove away. The defendant testified that when he was stopped by Meyer he asked the agents whether he had done anything wrong and the agents ordered him to get out of the car and searched him. He denied ever having possession of any narcotics and denied throwing a package out of the car. He did not know whether Jackson and Bush had any narcotics in their possession and did not see either of them throw any package out of the car. The defendant testified that the three men were first taken to the police station where they stayed for about an hour without being questioned and that from there they were taken to the Federal Narcotics Bureau where all three were questioned. While the defendant was in the narcotics bureau with the agents and the other men, an agent came in with a brown package and said, "Look what we found." Another agent asked him what it was and he replied that it was marijuana. According to the defendant, Meyer then asked him if he knew anything about the package and asked him if he had thrown it out of the car or if he had seen anyone else throw it out, and the defendant replied that it was not his package and he knew nothing about it. Defendant testified that Meyer then told

him, "It's your car and somebody has to pay for it." He testified on cross-examination that the agents did not show him the package at the scene of the arrest.

In rebuttal, Meyer testified that the first time he saw the package of narcotics it was in Olivanti's hand. He testified that Olivanti showed the package to the defendant at the time of the arrest. On cross-examination he testified that at the scene of the arrest he did not ask the defendant if he had thrown the narcotics and that he was not present when anyone else asked him about it.

The defendant makes several contentions with respect to this evidence. He argues that if Olivanti and Hnatt had seen him throw the package from the car they would have accused him of doing so, and contends that their failure to make this accusation, coupled with the fact that all three men were asked whether they knew anything about the narcotics, indicates that they did not see the defendant throw the package. Related to this argument is the contention that the agents' failure to question the defendant and the other two men in detail either at the scene of the arrest or at the city police station casts doubt upon the testimony that the defendant threw the package from the car. We are unable to agree with the defendant's contention. The fact that the officers did not at any time directly accuse the defendant of throwing the package out of the car or tell him that they had seen him do so is not necessarily inconsistent with the testimony of the two agents that they had seen him throw the package. Their failure to make this accusation goes only to the credibility of their testimony, which was a matter for the trial court to determine. We attach no significance to the fact that the agents, all Federal employees, waited until they arrived at the Federal Narcotics Bureau to question the defendant and the others at length.

The defendant also alleges that Olivanti's testimony that he saw the defendant throw the package is unworthy of belief because he was not in a position to see. He argues that

since Hnatt, who was driving the car in which Olivanti was a passenger, did not have a full view of the defendant, that Olivanti likewise could not see him. Hnatt testified that he was unable to see the defendant because his view was obstructed by one of the men in the rear seat of the defendant's automobile. Olivanti was riding on the passenger side of the car so that his opportunity for observation was different from Hnatt's and there is nothing inherently impossible or improbable in Olivanti's testimony.

The defendant also argues that the testimony of Meyer and Olivanti was contradictory in that Olivanti testified that after he retrieved the package he put it in his pocket and retained custody of it, and Meyer testified that Olivanti showed the package to the defendant at the time of the arrest. This minor inconsistency in no way casts doubt upon Olivanti's testimony that he saw the defendant throw the package. In every trial there are minor variances between the testimony of several witnesses and such variances do not necessarily create reasonable doubt as to the defendant's guilt.

The next contention advanced by the defendant is that the fact that Meyer filed complaints against all three men indicates that he did not know who had been in possession of the narcotics. Possession of narcotics may be joint, and in our opinion the fact that a complaint was filed against all three men does not indicate that Meyer was in doubt as to whether the defendant had been in possession of the drug.

Finally, in support of his contention that a reasonable doubt exists as to defendant's guilt, the defendant contends that a remark made by the trial judge at a hearing on a motion to vacate the judgment of conviction indicates that the judge himself entertained a reasonable doubt as to the defendant's guilt. At that hearing, which took place about two months after the conviction, defendant's counsel argued that agent Hnatt's testimony was unworthy of belief because his testimony that he saw the package leave the defendant's

hand was inconsistent with his own testimony that he first saw the package while it was in the air. As we have previously noted, this same contention was made during the trial by a motion to strike Hnatt's testimony, which was denied by the court. At the hearing on the motion to vacate the conviction, defendant's counsel stated, "It couldn't have come from his hand, if the first time he saw it, it was in the air, Judge." At this point the court said, "It came from somebody's hand." Counsel then replied, "It may have come from somebody's hand, but the important point is, whose hand did it come from?" The court then replied, "If you will be quiet for a minute I can find out, perhaps." Counsel argues that this statement by the court indicates that the court was not satisfied beyond a reasonable doubt that the defendant threw the package. We do not believe that the court's remark is subject to this interpretation. The hearing on the motion to vacate took place about two months after the judgment of conviction. The record shows that at the conclusion of the evidence at the trial the court remarked that he had checked over the evidence very carefully and found that two Federal agents had testified that they saw the defendant throw the package out of the window. The court noted that the only defense interposed by the defendant was a denial and an argument that it was impossible for the agents to see the defendant throw the package. The court pointed out that this argument was not valid since the agents were only about 10 feet behind the defendant's car and were in a position to see him throw the package. These remarks at the time of the finding of guilty indicate that the judge was at that time satisfied beyond a reasonable doubt as to the defendant's guilt and his remarks two months later, when his recollection of the testimony was doubtless not as clear, afford no basis for concluding that the trial judge was not satisfied beyond a reasonable doubt that the defendant was guilty.

The defendant's second claim is that he was convicted by the knowing use of perjured testimony. Such a claim will not generally be considered in reviewing a judgment of conviction, since in most cases the issue has not been presented to the trial court and the facts in support of the claim do not appear in the record. (*People* v. *Hoskins,* 25 Ill.2d 333, 336.) The claim of perjury in the present case was not presented to the lower court at any time during the trial of the case. The defendant contends, however, that the issue was raised in a post-trial motion to vacate the judgment of conviction and that therefore the issue is properly before this court. We have therefore carefully examined that motion. The defendant contended therein, that: "The testimony of the three Federal Narcotic Agents of the events occurring on the Midway Plaisance and upon which the court determined that Robert Albon Grayson and not one of the two persons in the automobile he was driving possessed the marijuana described in the indictment, is contradictory and improbable—so improbable that it can not be said that defendant, Robert A. Grayson has been proved guilty beyond a reasonable doubt as required by law." The motion then set forth the alleged contradictions and improbabilities in considerable detail. The first such contradiction involves the testimony of agent Meyer. The motion charged that Meyer testified at the preliminary hearing of Bush and Jackson that he saw the defendant throw a package from the automobile and that he stopped the defendant's car after securing the narcotics. The motion claimed that this testimony was contrary to his testimony at the trial where he testified that he first saw the package when Olivanti picked it up and was also contradicted by Olivanti's testimony at the trial that the defendant threw the package after his car had been stopped by Meyer's car. The motion next claimed that agent Hnatt's testimony at the trial that he saw the package leave the defendant's hand was inconsistent

with his own testimony that he first saw the package in the air. It was also urged that Olivanti was not in a position to see the defendant throw the package and, finally, it was alleged that the fact that Meyer charged all three men with possession indicated that he had a doubt as to who had thrown the package. Nowhere in these detailed allegations did the defendant claim that he was convicted on perjured testimony. The thrust of his argument was that the testimony of the agents was conflicting and improbable and was therefore insufficient to establish the defendant's guilt beyond a reasonable doubt. Such a contention falls short of a claim that the State knowingly used perjured testimony. In addition to these detailed allegations the motion also set forth in general terms that the finding of guilty was against the weight of the evidence and contrary to law; that the court erred in his rulings on the admissibility of evidence; that the defendant had been deprived of the rights guaranteed to him by the fourth amendment to the United States constitution and by section 6 of article II of the Illinois constitution; and that he did not receive a fair trial and was found guilty without due process of law. The constitutional provisions set forth in the motion pertain only to unreasonable searches and seizures. The general claim that the defendant was convicted without due process of law was insufficient to present the perjury issue to the trial court. We are of the opinion that the claim now advanced by the defendant was not presented to, or passed upon by, the trial court and this claim will therefore not be considered on this writ of error.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*