People of the State of Illinois, Plaintiff-Appellee, v. John E. Jordan and Willie E. Bennett (Impleaded), Defendants-Appellants.

Gen. Nos. 51,117, 51,118.

First District, First Division.

October 9, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendants, John E. Jordan, Willie E. Bennett and Theodore A. Saunders, were tried jointly on the charge of armed robbery. All three were found guilty after a jury trial. Saunders and Bennett each received sentences of one to three years and Jordan was sentenced to a term of imprisonment of twenty to thirty years; all three sentences to be served in the State Penitentiary. Bennett and Jordan appeal from the judgment entered on the verdict.

At a preliminary hearing held on a motion to suppress certain evidence Police Officer George Chota testified that on January 8, 1965, he and his partner, Arnold Sickler were on patrol duty. At one o'clock a. m. they were in the vicinity of Archer Avenue and Western Avenue in Chicago. At approximately one ten o'clock a. m. the officers were stopped for a light at Western Avenue and Archer Avenue. Chota further testified that at that time he observed a 1955 Chevrolet with three occupants in it go through a red light on Western Boulevard and Archer Avenue. The officers turned on their emergency signal; the Chevrolet responded in a reasonable manner and pulled off to the side of the road. Chota testified that as he started to get out of the patrol car a "look-out" message came over the radio of the patrol car:

> Be on the lookout for a '55 Chevrolet in very bad condition, possibly white over blue, and containing one negro. He had just pulled a stick-up at 55th and Kolin a few minutes ago west (sic) east on 55th.

Officer Chota testified that the car he had stopped for the traffic violation had no taillights, the bumpers were "hanging," both fenders on the back were "crunched," and the trunk was "caved in . . . ." Defendant Jordan was driving and defendant Saunders was sitting next to Jordan in the front seat. Defendant Bennett was sitting in the rear seat of the automobile. Officer Chota testified that after he had ordered the three defendants out of the car he began to question them as to what they were doing there and where they were coming from. The answers given failed to satisfy the two officers. The defendants stated that they were going home, and gave to the officers as their home address a location that was in a southeasterly direction from where their car had been stopped. At the time

of the arrest the defendant's car had been headed in a northeasterly direction. Officer Chota stated that after he asked the defendants to step out of the car he requested further information from headquarters as to the identity of the robbery suspect mentioned in the earlier report. Officer Chota received additional information to the effect that the suspect ". . . had a sort of grayish plaid topcoat on, and he was male, colored, about six foot, with a .25 caliber steel automatic . . . ." The witness further testified that defendant Jordan, as he saw him at the time of the arrest, was male, colored, and about five eleven in height. After the receipt of the added information the police searched the car and found a .25 caliber automatic fully loaded under the passenger side of the front seat. During the time of the search the defendants were on the sidewalk being watched by other officers who had arrived at the scene.

Police Officer Arnold Sickler also testified at the preliminary hearing. Sickler essentially corroborated the testimony of his fellow officer Chota, except he stated that the defendant's car had gone through a red light at Western Avenue, not Western Boulevard; that defendant Jordan was wearing a tweed coat, not mentioning the plaid coat referred to by Chota; that the patrol car was moving with the light when they spotted the defendants going through a light, and was not stopped as had been stated by Chota; and finally that there had been no questioning of the defendants prior to the search of the car, whereas Chota had testified to some questioning prior to the search.

At the trial Ronald Anderson testified that he was working alone at a gas station located at 4444 West 55th Street, Chicago, as an attendant, on the night of the robbery. He testified that at about 12:50 a. m., a 1955 blue and white Chevrolet pulled into the gas station with three persons in the car. Jordan got out of the car and asked Anderson to let him into the gas

342

station washroom because the door of the washroom was locked. When Anderson opened the door for him, Jordan pushed Anderson inside and robbed him, taking about Eighteen Dollars of the company's money. Anderson further testified that at the time of the robbery defendant Bennett was wearing a leather coat, and appeared to be about five nine in height. Jordan was wearing a tweed coat at the time of the robbery. The witness stated that although he had told the grand jury that $23.73 was taken from him he now believed that only $18.20 was taken in the robbery. Anderson further testified that he was unable to identify Bennett as being a participant in the robbery at a lineup held an hour after the robbery. From the witness stand, however, Anderson did identify Bennett as being the driver of the Chevrolet that had been used as a get-away car. He stated that he had recognized Bennett in court the day before he testified. Anderson further testified that he had positively identified Jordan at the lineup held on the night of the robbery, and he was wearing at that time the same tweed coat.

Officer Chota also stated that the three defendants emptied their pockets at the police station and that the total amount of money in the possession of the three defendants was $18.20. He said that the police kept this money, and to his knowledge it was all the money that the defendants had. The defendants had not yet been taken to jail.

Egbert Schrik, a witness for the defense, stated that he was employed by the Cook County Jail on the night of January 9, 1965. On that night he received the valuables possessed by each prisoner as he was checked into the jail. He testified that defendants Jordan, Bennett, and Saunders had between them over Fifteen Dollars when they were checked into the jail.

On appeal it is contended: (1) that defendants' motion to suppress evidence was improperly denied; (2) that

defendants were not proven guilty beyond a reasonable doubt; (3) that prejudicial error occurred in the prosecutor's accusations of misconduct by a defense attorney; (4) that the prosecutor used prior statements of his witnesses, made outside of court, to rehabilitate an impeached witness; and (5) that the prosecutor made improper remarks to the bailiffs within the hearing of the jurors regarding the personal comfort of such jurors.

We consider first whether the preliminary motion to suppress as evidence the gun found in the search of defendant's automobile should have been granted. Defendants contend that the lawfulness of the search of the car depends upon whether or not the radio message identifying the robbery suspect and get-away car raised probable cause for the officers to believe that the three defendants were responsible for the robbery of the gas station. They contend that there was no probable cause for the search, and that failure to suppress the evidence requires that the cause be reversed. Defendants argue that the radio message mentioned only one suspect being present in the car; that because there are many automobiles similar to the one mentioned in the message the report was too general to give grounds for probable cause; and that the description of the defendant was of such a general nature that it could not support an adequate identification of Jordan as having been involved in the perpetration of a felony.

The constitution requires that a search by the police must be reasonable in order to be valid. People v. Watkins, 19 Ill2d 11, 166 NE2d 433. If the search of the car in the instant case was not a reasonable one this court would reverse. Mapp v. Ohio, 367 US 643. The reasonableness of a particular search must be determined in light of the facts and circumstances that confronted the officers making the search. People v. Watkins, 19 Ill2d 11, 166 NE2d 433. The

United States Supreme Court in Preston v. United States, 376 US 364, 366, stated: "Our cases make it clear that searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible (citations omitted) . . ."

■■■■■ The general requirement that a search warrant must be obtained prior to a search of a suspect's home is relaxed somewhat in the case of a search of an automobile in which the suspect is riding. This holds true ". . . because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, 267 US 132, 153. The search of the automobile must be based upon probable cause, ". . . a knowledge of facts justifying a reasonably prudent person in believing that a crime has been or is being committed, and that evidence thereof is contained in the automobile . . ." People v. Erickson, 31 Ill2d 230, 233, 201 NE2d 422. "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Carroll v. United States, 267 US 132, 158. See also Brinegar v. United States, 338 US 160.

In People v. Watkins, 19 Ill2d 11, 166 NE2d 433, the defendant was convicted on a charge of possession of policy slips. He contended that the Supreme Court should reverse his conviction because the policy slips introduced into evidence had been obtained in an unconstitutional search, and should therefore have been suppressed. Defendant had initially been arrested for a minor traffic violation prior to the search of his person, and he contended that the search was not a reasonable one incident to an arrest. The Supreme Court held that the minor nature of the offense for which the defendant

had been arrested did not warrant the search that took place; therefore, the search could not be considered a reasonable one incident to arrest for a minor traffic violation. The opinion did not mention whether the arrest for the possession violation had preceded or followed the search. The court found, however, that the search did not have to be justified as being incident to an arrest. The police had sufficient knowledge of facts to allow them to proceed with the search on the basis of probable cause " . . . without relying solely upon the traffic violation." People v. Watkins, 19 Ill2d 11, 19, 166 NE2d 433. Therefore, the court in Watkins held that a search of an individual stopped for a traffic violation of a minor nature could be upheld as reasonable where the police had sufficient knowledge of facts to give them probable cause, although the same search would be unreasonable and constitutionally invalid as a search incident to an arrest.

■ In the instant case the police clearly possessed probable cause for the search of the automobile in which defendant Jordan was riding, and the search was a reasonable one well within constitutional requirements. People v. Watkins, 19 Ill2d 11, 166 NE2d 433; People v. Thomas, 31 Ill2d 212, 201 NE2d 413; People v. Zeravich, 30 Ill2d 275, 195 NE2d 612. The factual correlation between the suspect and get-away car as reported in the "look out message" and the appearance of defendant Jordan and the car in which he was riding; the physical proximity of the Chevrolet to the scene of the crime; and the suspicious answers given by the driver when questioned provided a sufficient factual basis for the officers to have probable cause to believe that the three occupants of the car had recently been involved in the reported stick-up. They were therefore entitled to search the car for any evidence of the stick-up as well as for the purpose of insuring their own safety. Car-

346

roll v. United States, 267 US 132; People v. Witt, 159 Cal App2d 492, 324 P2d 79.

██ We find no merit to the argument that the police officers did not have probable cause because there was only one person referred to in the radio report and the car that was searched contained three occupants. Other facts known to the officers were sufficient in themselves to constitute the requisite probable cause. Nor is there any merit to the contention that the testimony of the two officers at the preliminary hearing should be totally discounted because of inconsistencies in their testimony. The inconsistencies were not major ones. Any contradictions in testimony were for the trier of fact to resolve. At most, contradictions of this sort go to the credibility of the witnesses, and this is an issue to be resolved by the trier of fact. People v. Robinson, 30 Ill2d 437, 197 NE2d 45; People v. Grayson, 29 Ill2d 229, 193 NE2d 801.

██ ██ It is next contended that the defendants were not proven guilty beyond a reasonable doubt because of inadequate identification of the defendants as being the actual participants in the robbery. Defendants argue that the inability of Anderson to identify Bennett at the lineup renders his subsequent identification in court invalid, and also casts a reasonable doubt upon his identification of Jordan at the same lineup. We cannot agree. It is settled law in this state that a positive identification by one credible witness is sufficient to uphold a conviction. People v. Denham, 33 Ill2d 599, 213 NE2d 539. Anderson positively identified Jordan at the lineup held an hour after the robbery and at the trial. He also identified the car in which the defendants were riding at the time of their arrest. The fact that Bennett was not selected by Anderson from the lineup goes only to the weight of his testimony. People v. Brinkley, 33 Ill2d 403, 211 NE2d 730. He did positively identify Bennett at the trial. It was up to the jury to determine the credi-

347

bility of the witness and the weight to be given to his testimony.

Defendants argue that certain discrepancies in the evidence were of such a material nature so as to raise a reasonable doubt as to their guilt. Anderson testified that to the best of his knowledge he gave Jordan a total of roughly Eighteen Dollars. On cross-examination he stated that the next morning the total loss was found to be $23.73, and that this was the amount he told the grand jury had been taken from him. Officer Chota testified that the three defendants had emptied their pockets in his presence, and between them they had $18.20. However, Egbert Schrik testified that at the time of their internment in the county jail the three defendants still had in their possession an amount in excess of Fifteen Dollars. Defendants also argue that there were discrepancies between the testimony of Anderson as to a tweed coat, the testimony of Officer Chota as to a plaid coat, and a photograph introduced into evidence by the defense showing defendant Jordan in a plaid coat. They also argue that the defendants were incapable of committing the crime because they were too far from the scene of the robbery in light of the testimony as to the time of the robbery, and the testimony as to the time when the defendants were picked up for going through a red light.

These variations in the evidence were brought to the attention of the jury for their consideration with all of the other evidence produced before them. The discrepancies and inconsistencies are of a minor nature. None of the testimony elicited was contrary to the laws of nature or to universal human experience. People v. Coulson, 13 Ill2d 290, 149 NE2d 96. These minor discrepancies and inconsistencies at most affect the credibility of the witnesses involved. People v. Robinson, 30 Ill2d 437, 197 NE2d 45. The conclusions to be drawn from the facts presented in evidence are for the jury

unless ". . . the proof is so unsatisfactory as to justify a reasonable doubt of guilt." People v. McAfee, 80 Ill App2d 142, 146, 225 NE2d 74. We do not believe that any of the discrepancies or inconsistencies of the testimony at trial were serious enough to warrant our taking the determination of facts away from the jury.

█ It is further contended that the prosecutor accused the defense counsel of misconduct, and that this accusation deprived the defendant of a fair trial. This occurred during verbal exchanges between the attorneys. We find no useful purpose in detailing the colloquy that took place. We are satisfied that defense counsel invited and provoked these remarks of the prosecutor. People v. Lewis, 25 Ill2d 442, 185 NE2d 254. We have carefully examined the record as to these occurrences, and we are satisfied that no substantial prejudice was suffered by defendants. It is also complained that the prosecutor erroneously attempted to rehabilitate the testimony of Anderson on redirect examination by introducing prior out of court statements made by Anderson in an attempt to corroborate his testimony. We find no error in the procedure of the prosecutor.

█ Finally it is contended that the trial judge erred in not granting a mistrial when the defense attorney brought to the court's attention certain instructions given to the bailiffs in the presence of the jury by the prosecutor. On two occasions the prosecutor instructed the bailiffs to tell the jurors they could take their coats off, and on one occasion he instructed them to supply water to the jurors. The defendants argue that this was done by the prosecutor in an attempt to curry favor with the jurors and to unfairly influence them. The prosecutor should not have requested the bailiffs to perform the aforementioned tasks; he should have made his requests directly to the trial judge. However, we note that the trial judge considered the claim of the defense attorney and denied his motion. Such a denial was clearly

349

within the discretion of the trial judge. In the absence of any abuse, exercise of this discretion cannot be held to constitute prejudicial error.

For the above reasons the judgment is affirmed.

Affirmed.

MURPHY, P. J. and ADESKO, J., concur.