THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY G. DEL GENIO, Defendant-Appellant.

(No. 71-354;

Second District—February 15, 1973.

*Rehearing denied April 10, 1973.*

Ralph Reubner, of Defender Project, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant, Anthony G. Del Genio, was indicted for armed robbery in which approximately $14,000 was taken on the evening of July 30, 1969. Defendant was found guilty in a jury trial and sentenced to 6-18 years in the penitentiary.

On appeal, defendant contends that the in-court identification of defendant was based upon a suggestive pretrial identification; that he was not proven guilty beyond a reasonable doubt, and that the prosecutor's closing argument contained prejudicial remarks constituting reversible error.

On the evening of July 30, 1961, two men went into the Pacemaker store in Rockford, Illinois. One was disguised in a red wig and wax mask. The other was not disguised. The disguised robber carried a brief case and went to the office where the manager opened the safe containing $13,000-$14,000 and the robber filled his brief case with the money. Six months after the robbery, Detective Francis of the Rockford police transported eyewitnesses, the cashier, Paula Dal Pra Corcoran, the store manager, Jerome Sullivan, and Shirley Scott, an employee of the store, to the Boone County jail at Belvidere to view two men believed to be the robbers of the Pacemaker store. When they arrived at Belvidere the Sheriff of Boone County asked the defendant to come out for a telephone call in the company of other prisoners. One Hollis Pruitt came out of the jail cell first and when he realized it was a surprise showup he shouted a warning back into the cell area to defendant, whereupon defendant refused to appear. Defendant never did appear and Detective Francis then showed the witnesses three photographs he had obtained from the Boone County sheriff. One photograph was of the first prisoner Pruitt, another was of the defendant, and a third picture was of a police lineup of four or five individuals, including the defendant. The witnesses Corcoran and Scott selected the defendant's picture as the undisguised robber. Store manager Sullivan was unable to identify defendant; he merely stated the picture looked more like the robber than anyone he had ever seen before.

On February 24, 1970, two weeks after the unsuccessful showup, the three eyewitnesses separately identified the defendant in a formal lineup in the Winnebago County jail. Two other witnesses, who did not have direct contact with the defendant, were unable to identify him.

Prior to trial two separate hearings were had on defendant's motion to suppress identification of the defendant. On January 6, 1971, the

Public Defender conducted an extensive hearing on this motion. A motion for the substitution of private counsel for defendant was allowed and on February 17, 1971, before another Judge, once again an extensive hearing was had to suppress identification of the defendant. In both instances, the motions to suppress were denied.

At the trial, witnesses Corcoran, Scott and Sullivan, made an in-court formal identification of defendant. The cashier, Corcoran, definitely identified the defendant, testifying she had a face to face and side view of him under the store's fluorescent lights at a distance of a few feet for about a half a minute. She described his clothing, that he had a mustache, insisted he was not wearing glasses, and that she made a special effort to observe his features and clothing. Witness Shirley Scott testified she observed the undisguised defendant face to face at a distance of two and one-half to three feet for a matter of seconds. She recalled that when showed a photograph of defendant and others that she identified him. She described his physical appearance and the fact he did not wear glasses or have a mustache. The manager, Sullivan, testified he observed defendant from a distance of 6-10 feet. While he could not identify defendant prior to the lineup, he positively identified him in the lineup.

Detective Francis testified that it appeared between the time of trial and the showup at Belvidere, that the defendant had lost approximately sixty pounds. Two witnesses, who had not had a good view of defendant, indicated to the police artist who made a "composite" drawing of the robbers, that defendant and the other robber were wearing eyeglasses, and the official police description of the robber did include eyeglasses and a mustache.

The defendant asserts the trial court was in error when it denied his motions to suppress the identification testimony against him. Defendant contends the in-court identifications were based entirely upon a pretrial lineup procedure which was the fruit of a highly suggestive and tainted identification confrontation and photographic exhibition held six months after the armed robbery. He further contends the in-court identification did not have its origin independent and uninfluenced by the tainted pretrial lineup and photographic confrontations held prior to the in-court identification of himself. He claims, therefore, the in-court identification violates his right to due process of law guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. In support of his contention he has cited *Stovall v. Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967.

■■ In further support of his contention he has cited *People v. Lee* (1970), 44 Ill.2d 161, 169, 254 N.E.2d 469, 473, which states in approval of *Stovall v. Denno:*

"The test is whether the identification procedures were 'unnecessarily' suggestive and the methods used must be examined in light of the circumstances in each case."

With this, we agree. (See also, *People v. Tuttle* (1972), 3 Ill.App.3d 326, 278 N.E.2d 458.) In *Lee* the court found that the testimony of one witness in question was conflicting and inconclusive and the in-court identification by the other witness was "weak at best". That is not the factual situation in the case before us.

■■ Defendant has further cited *People v. Fox* (1971), 48 Ill.2d 239, 246, 269 N.E.2d 720, 725, in which the court stated:

"In our case the record indicates that the three witnesses had adequate opportunity to observe the defendant during the course of the argument on the evening of January 1, 1968."

The court then went on to hold that the pretrial confrontation was not necessarily suggestive. We find that to be the situation in the instant case.

In *People v. Rodgers* (1972), 53 Ill.2d 207, 290 N.E.2d 251, the Supreme Court held that identification of the accused two years after the crime did not deny due process where identification was based upon an origin independent of the photographic identification including an excellent opportunity to observe the defendant at the time of the crime.

■■ Defendant also cites *Simmons v. United States* (1967), 390 U.S. 377, 383, 19 L.Ed.2d 1247, 1252-53. In *Simmons* the court held that each case must be considered on its own facts, and that a conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". With this, we agree.

In this case the pretrial identification was preceded by a situation in which the cashier Corcoran was able to describe defendant to the police immediately after the robbery and was able to pick out his picture as the one that looked like the man and to use as an example another picture to illustrate his physical stature. The witnesses herein had ample opportunity to observe the defendant. In *People v. Brown* (1972), 52 Ill.2d 94, 99, 100, 285 N.E.2d 1, 5, 6, the court held:

"* * * The practice of showing photographs of suspects to witnesses is essential to effective law enforcement. The dangers inherent in the practice have been recognized by the United States Supreme Court, but nevertheless, initial identification by photograph has its approval. The Court has held that each case must be considered on its own facts, and that convictions based

on in-court identifications following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [Citation.]

\* \* \*

\* \* \* Circumstances may necessitate such procedure and to prohibit it may very well hamper effective law enforcement.

\* \* \*

The prosecutrix had a good opportunity to observe the defendant. She gave a description of him and the clothing he wore which was sufficiently detailed to enable the police to locate and arrest him within 24 hours. She made an identification from a photograph, identified him in a lineup, and later at the trial \* \* \* We cannot say that the identification of the defendant was so doubtful, vague or uncertain that it produced a conviction which must be reversed. [Citation.]"

Photographs were used as a means of identification by two of the three witnesses after defendant refused to appear at the Boone County showup, and was identified by all three eyewitnesses at a formal lineup at a later date. We do not find that under these circumstances any of the defendant's constitutional rights were violated in this respect.

■■ Defendant also complains that the fact that the Rockford detective took the three eyewitnesses to Belvidere to view a suspect was highly suggestive. This situation must necessarily arise when a victim is called to the station house to identify a suspect or when he is taken to the jail to identify a suspect. The courts of Illinois have held that this merely goes to the weight of the testimony of the witness and does not so taint the in-court identification so as to make it inadmissible. See *People v. Oliver* (1972), 5 Ill.App.3d 860, 284 N.E.2d 369; *People v. McIntosh* (1967), 82 Ill.App.2d 90, 227 N.E.2d 76; and *People v. Wooley* (1970), 127 Ill.App.2d 249, 262 N.E.2d 237.

■■ We find that the State did establish by clear and convincing evidence the in-court identification had origins independent of the procedure alleged by defendant to have been highly suggestive. The three eyewitnesses were present at the time of the crime and were able to positively identify defendant, and when the circumstances in this case are compared with the cases cited by defendant, it is clear an independent basis for identification of the defendant was established by clear and convincing evidence.

The defendant claims the evidence presented at the trial was insufficient to prove defendant guilty beyond a reasonable doubt. The basis

for this contention is the differences in the pre-apprehension description of the robber given by the three eyewitnesses herein and two other witnesses who were not called to testify as they were unable to identify Del Genio in the formal lineup. In support of the defendant's contention that the testimony of the three eyewitnesses did not prove the defendant guilty beyond a reasonable doubt the defendant has cited *People v. Jones* (1972), 4 Ill.App.3d 888, 282 N.E.2d 273. In *Jones*, there was but one witness to an armed robbery of a store who could not remember whether the defendant did or did not have a mustache. She identified the defendant in a formal lineup. The court while reversing on other grounds, held that this was sufficient credible evidence upon which the jury could enter a verdict of guilty and stated in quoting *People v. Charleston* (1969), 115 Ill.App.2d 190, 197, 253 N.E. 91, 94:

> "Precise accuracy in describing facial characteristics is unnecessary where, as here, an identification is positive. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though his testimony is contradicted by the accused. [Citation.]"

In *People v. Botulinski* (1943), 383 Ill. 608, 50 N.E.2d 716, cited by defendant, there was a showup in which one party identified the accused as the robber. The court stated at page 719:

> "* * * We have held that where one accused of a crime is brought alone before the witness for the purpose of identification, such identification is not entitled to the same weight and credibility as where the witness picks out the accused from a number of persons brought before the witness. [Citations.]" 383 Ill. at 615.

Defendant has also cited *People v. Marshall* (1969), 74 Ill.App.2d 483, 221 N.E.2d 133, where the court reversed on the basis of one witness identification of the defendant as to whether he did or did not have a mustache, and primarily on the basis that the victim stated to the police that the robber was 5' 6" in height when actually he was 5' 11". However, in *People v. Calhoun* (1971), 132 Ill.App.3d 665, 270 N.E.2d 450 at 452, it was held that a witness' description of the defendant as being a Negro 5' 8" or 9" who weighed 170 to 180 pounds did not destroy the credibility of the identification where the defendant was actually 6' 2½" tall and weighed 200 pounds.

We do not believe that any of the cases cited by defendant are controlling.

■■■ It has been repeatedly stated in the Illinois courts that where the identification is not vague, doubtful or uncertain, that minor discrepancies and inconsistencies do not destroy the credibility of eyewitness identification, but only affects the weight to be given such testimony.

The sufficiency of such identification is a matter for determination by the trier of fact. See *People v. Hill* (1972), 3 Ill.App.2d 694, 279 N.E.2d 497; *People v. Cooper* (1971), 133 Ill.App.2d 31, 270 N.E.2d 447, *People v. Stringer* (1970), 129 Ill.App.2d 251, 264 N.E.2d 31.

In *People v. Strother* (1972), 53 Ill.2d 95, 100-101, 290 N.E.2d 201, 204, the court stated:

> "* * * Minor discrepancies in testimony taken at two different times do not establish perjury nor destroy the credibility of the witness but only go to the weight of the testimony. [Citation.]"

In the instant case any discrepancies were brought out to the jury by defense counsel both on cross-examination and in his closing argument.

In *People v. Jordan* (1967), 87 Ill.App.2d 338, 231 N.E.2d 630, there was but one witness to the robbery committed by two men. The victim was unable to identify one of the two men at a formal lineup, but did identify him in court. The court held that the fact he could not identify him in the lineup went only to the weight of his testimony.

■■■ Lastly, the defendant contends that the State's Attorney's closing argument contained prejudicial remarks that are plain and reversible error. It is to be expressly noted that no objection was made to the prosecutor's argument at the time of trial. The defendant properly states that in a criminal case where the evidence is evenly balanced that the court will consider such errors. We do not find that this case is a close case and therefore we are not bound to consider the prosecutor's statement as to whether or not it does constitute plain error. Nonetheless, we find that the prosecutor's statement did not in fact constitute plain error. The main gist of defendant's argument in that regard is the prosecutor's reference to the two eyewitnesses, Chapman and Hoefer, who were not called by the State. The defendant contends that the prosecutor's remarks were not invoked or provoked by the defense. Examination of the record discloses the following chronology. In his opening statement to the jury, defense counsel mentioned Sue Chapman and Dennis Hoefer who were State's witnesses who would testify. The prosecutor in his closing argument commented on this by saying that these two witnesses did not identify or see the defendant. Defense counsel then in his closing argument to the jury discussed the non-appearance of Hoefer and Chapman and asked the prosecutor to explain why the State did not bring them in. The prosecutor replied to this query in his closing argument by stating that defense knew of them and that if the defense thought that these witnesses "could have helped him in any way he would have called them in here." As the court stated in a similar situation in *People v. McElroy* (1964), 30 Ill.2d 286, 291-292, 196 N.E.2d 651, 654, where

the defense counsel rhetorically inquired why an informer had not been called as a witness by the people:

> "* * * We believe it quite obvious, however, that the arguments of defense counsel invited the retaliatory comments and explanations of the prosecutor now complained about, and that the latter were therefore within the bounds of proper argument. [Citations.] Furthermore, having failed to object to such argument in the trial court, * * * defendant is deemed to have waived any error which resulted. [Citation.]"

■■ The general rule is that failure to produce evidence or witnesses, injected into a case by the defense counsel gives rise to the right of comment by the prosecution. *People v. Durso* (1968), 40 Ill.2d 242, 253, 239 N.E.2d 842 at 848.

Judgment of trial court affirmed.

Affirmed.

SEIDENFELD and ABRAHAMSON, JJ., concur.