THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LLOYD MC-MORRIS, Defendant-Appellant.

(No. 58387;

First District (4th Division)—January 23, 1974.

Paul Bradley, Deputy Defender, of Chicago (Robert E. Davison, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant, Lloyd McMorris, was charged by indictment with two counts of burglary with intent to commit theft, two counts of burglary with intent to commit rape, and a single count of rape. Following a bench trial, defendant was found guilty of both counts of burglary with intent to commit theft, but was found not guilty of all other charges. He was sentenced to serve concurrent sentences of not less than ten years nor more than twenty years in the Illinois State Penitentiary. Defendant appeals this conviction, contending that:

(1) The identification of defendant by the complaining witness was based on a suggestive lineup;

(2) The evidence was insufficient to prove the defendant guilty of burglary with intent to commit theft beyond a reasonable doubt; and

(3) The sentenced imposed by the trial court was excessive and should be reduced.

The facts are as follows:

Linda Elliot testified at the trial that she was asleep in the bedroom of her first floor apartment at 2941 South Michigan, in Chicago, on August 10, 1971, when she was awakened by a man on the bed. The man attempted to have intercourse with her and told her he had come for "sex". She stated that after the unsuccessful attempt the man then put a pillow over her head and told her not to move or she would be "hurt". He ransacked the apartment and left, taking with him $17.00, a wristwatch, a television set, a portable stereo, and several other items. Mrs. Elliot then called the police. Though Mrs. Elliot was unable to see the man's face clearly, she gave the police a general description including height and weight, the man's haircut (a "short Afro"), the clothes

he was wearing, including a "metallic object" near the waist, and a description of his "distinctive" voice.

Mrs. Elliot further testified that during the evening of August 25, 1971, she was awakened by the same man who had entered her apartment on August 10, 1971. This time the man succeeded in having intercourse with Mrs. Elliot. Following the attack the man dressed and handed Mrs. Elliot her purse, instructing her to give him $8.00. He left and she phoned the police.

Mrs. Elliot said she was taken to the hospital by the police and following this she went to the police station to view a lineup. At the lineup each participant was asked to repeat the phrases that Mrs. Elliot's attacker had used. The first time the men spoke Mrs. Elliot was about 15 feet away and she was not able to identify any of the voices. At a distance of a few feet she identified, by voice, Lloyd McMorris as the man who had entered her apartment on August 10 and August 25. After she identified defendant, one of the officers present pointed out the belt buckle on defendant's coat and asked if it could be the metallic object she saw near the attacker's waist. She replied that it could have been. After she viewed the lineup, Mrs. Elliot identified a watch and some of the currency recovered from defendant as taken from her apartment during the occurrences of August 10 and August 25, 1971.

Larry Ledo also testified as a witness for the State. He stated that on August 25, 1971, he was employed as a guard at the South Commons Housing Project. In the early morning hours of that date he was near 2941 South Michigan on his patrol scooter. He said that he observed a man running through the parking lot and gave chase on his patrol scooter. The man stopped and Mr. Ledo spoke with him. This man was identified by Mr. Ledo as the defendant. After this, he resumed his patrol until he noticed a police car parked in front of 2941 South Michigan and went to speak with the officers. He next saw defendant later that day in police custody.

■■ Defendant first argues that the lineup following his arrest was unduly suggestive and that Mrs. Elliot's identification should have been suppressed as a result. He contends that the lineup was suggestive since Mrs. Elliot was told that a suspect was in custody prior to viewing the lineup and that he was the only participant in the lineup wearing a jacket with a large bright metallic buckle. It is well established that in determining whether identification procedures were so unnecessarily suggestive as to warrant suppression, that procedure must be considered in light of the totality of the facts and circumstances surrounding that particular confrontation between the witness and defendant. (*Stovall v. Denno*, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. (1967); *People v. Fox*, 48

Ill.2d 239, 269 N.E.2d 720; *People v. Blumenshine,* 42 Ill.2d 508, 250 N.E. 2d 152.) Considering the totality of facts and circumstances surrounding the lineup confrontation in the instant case, we are of the opinion that the trial court did not err in denying defendant's motion to suppress.

■■ While defendant was in fact the only participant in the lineup to be wearing a jacket with a metallic buckle, it stands uncontroverted in the record that Mrs. Elliot did not identify defendant because of his clothing, but rather by his voice. At the trial, on direct examination, Mrs. Elliot stated she did not notice the belt buckle until after she had identified defendant as her assailant by his voice. When an officer brought the belt buckle to her attention after this, she stated that could have been the object she saw in her apartment. On cross-examination Mrs. Elliot stated again that she was "not aware" of the belt buckle prior to the time she identified the defendant. Defendant's counsel made repeated inquiries regarding the time when Mrs. Elliot first noticed the belt buckle, to which she replied:

> "It was not until after I had told Detective Kennedy that the second man in the lineup [defendant] was the assailant that he asked me whether the belt buckle on the coat might be the object that I had described. And when he asked me that, I said, it could be. I had already identified him."

The defendant's clothing (which was the same clothing he wore when arrested) was not then a factor in his identification by the complaining witness and the lineup was not unduly suggestive as a result. (See *People v. Shaw,* 6 Ill.App.3d 366, 286 N.E.2d 3.) In addition, the statement by the police to Mrs. Elliot that they had a suspect in custody would also not render this particular confrontation unnecessarily suggestive. This court, in *People v. Del Genio,* 10 Ill.App.3d 437, 294 N.E.2d 78, dealing with a claim that this same procedure was unduly suggestive, stated:

> "This situation must necessarily arise when a victim is called to the station house to identify a suspect or when he is taken to the jail to identify a suspect. The courts of Illinois have held that this merely goes to the weight of the testimony of the witness and does not so taint the in-court identification so as to make it inadmissible. See *People v. Oliver,* 5 Ill.App.3d 860, 284 N.E.2d 369; *People v. McIntosh,* 82 Ill.App.2d 90, 227 N.E.2d 76; and *People v. Wooley,* 127 Ill.App.2d 249, 262 N.E.2d 237." 10 Ill.App.3d at 442.

Defendant next contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of burglary with intent to commit theft. Defendant's argument is best summarized by the language of

the court in *People v. Johnson,* 28 Ill.2d 441, 192 N.E.2d 864, which defendant quotes in his brief:

> "We are of the opinion that *in the absence of inconsistent circumstances,* proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justified the assumption that *the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose.*" 28 Ill.2d at 443. (Emphasis added.)

Defendant argues that there were inconsistent circumstances in the instant case that negate this inference, arguing that the purpose of the entry on August 10 and on August 25 could have just as readily been to commit rape as to commit a theft. It is also claimed that defendant's statement to Mrs. Elliot that he had come for "sex" serves to negate the inference still further.

■■ We disagree with defendant's contention. Taking the incident of August 10, 1971, first, it is quite clear that defendant entered Mrs. Elliot's apartment with the intent to commit theft. As in *People v. Bey,* 42 Ill.2d 139, 246 N.E.2d 287, the facts show that a woman was awakened in her apartment by a man attempting to commit a sexual assault upon her. In *Bey* the man fled taking some purses when the woman and a roommate began to scream. Defendant argued that the State had failed to prove his larcenous intent. The court found no merit in this argument:

> "The essence of defendant's complaint on this score is that the State failed to prove his intent to commit larceny, * * *. This argument overlooks several factors: one is that there is no indication that defendant knew, prior to entering the apartment, that three young girls resided there; a second is that it seems unlikely that a burglar, when confronted with two screaming, hysterical girls in a darkened room at 4:30 A.M. would commence searching for purses when his efforts to obtain sexual gratification were frustrated. Much more reasonable seems to be the import of the testimony that defendant had entered intending to steal, found the purses, then determined to attack the girls, and, when violently opposed in this effort, picked up the purses and fled. We find the proof adequate to establish the larcenous intent. See *People v. Weiss,* 367 Ill. 580." 42 Ill.2d at 145.

In the instant case, as in *Bey,* it was quite clear that defendant had no idea that a woman was sleeping inside and entered the apartment with the intent to commit theft. Upon seeing Mrs. Elliot sleeping in the nude

he decided to attack her and carried out his original plan after his unsuccessful attempt at intercourse. Defendant's comment to Mrs. Elliot, that he had come for "sex", seems only to have been part of an attempt to get her to cooperate in the act.

Turning to the August 25, 1971 occurrence, defendant claims that rape could have been the purpose for which that entry into the apartment was made, since all the valuables had been removed by him on August 10, 1971. The record does not indicate this at all, but merely shows that defendant had taken certain items with him during the first incident. It was entirely logical for defendant to enter to find more valuables, to again see Mrs. Elliot sleeping, this time succeed in having intercourse with her, and then demand money from her. The trial court again did not err in finding that defendant had entered with intent to commit theft on this date.

■■ Defendant's final claim is that the concurrent sentences of not less than 10 years nor more than 20 years in the Illinois State Penitentiary were excessive and should be reduced by this court. Since the instant case had not reached a "final adjudication" as of the effective date of the Unified Code of Corrections, defendant is therefore entitled to the benefit of its provisions. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4; *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) Burglary is classified as a Class 2 felony by the Code (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 19—1(b)) and as such the maximum term may be any term in excess of one year not exceeding twenty years, with a minimum term not greater than one-third the maximum term set by the court. (Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 1005—8—1(b) (3) and 1005—8—1(c) (3).) The minimum sentences are accordingly modified to not less than six years and eight months.

■■ We also find, however, that no reason has been presented to this court for any reduction of the maximum sentence imposed by the trial judge. Where it is contended that a sentence imposed by a trial judge is excessive, even though such sentence is within the limits prescribed by the applicable law, this sentence will not be disturbed unless it is clear that such penalty constitutes a great departure from the fundamental spirit and purpose of the law. This is not evident in the instant case. (*People v. Smith*, 14 Ill.2d 95, 150 N.E.2d 815.) Further, the power of a reviewing court to reduce sentences should be used "with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of a trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals." (*People v. Taylor*, 33 Ill.2d 417, 424, 211 N.E.2d 673.) The concurrent maximum

sentences of not more than 20 years are hereby affirmed, with the minimum sentences modified to not less than 6 years and 8 months.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed as modified.

Judgment affirmed as modified.

BURMAN and JOHNSON, JJ., concur.