(No. 37390.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES HARPER, Plaintiff in Error.

*Opinion filed May 20, 1964.*

JOHN F. HECHINGER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, James Harper, was tried in the criminal court of Cook County by the court, without a jury, convicted of the crime of assault with intent to commit murder, and sentenced to the penitentiary for a term of not less than 5 nor more than 15 years. We have issued a writ of error to review the judgment of conviction.

The defendant's first contention is that the trial court violated the defendant's right to due process of law by failing to conduct a hearing to determine the mental capacity of the defendant to stand trial. The record shows that the defendant and one James Reed were indicted on May 5, 1961 for an offense allegedly committed on April 2, 1961. On May 12 the court appointed the public defender to represent the defendant and the case was continued until May 22. After three other continuances the case came on for trial on June 16. At that time counsel for the defendant stated that he could not go to trial until he had investigated certain matters which he believed were absolutely necessary to go into. He asked the court for a continuance and stated that there was a question as to the mental capacity of the defendant "at certain times" which he had to clear up and that it was necessary to check certain records. The prose-

cutor inquired whether counsel had any information that the defendant had been in a mental institution and counsel replied that he had not made that representation, but said that he thought that the defendant might have been in the psychiatric section of the county hospital shortly after the time of his arrest. The judge stated that he would subpoena the county hospital records himself and that in the meantime they would go ahead with the case. The judge said that if he found out that there was any question about the defendant's mental capacity he would call a halt and if there was no such question, they would finish the case. The case then proceeded to trial.

At the close of the direct testimony of the first witness for the prosecution, the court advised defense counsel that it had received information that the defendant had been admitted to the hospital on April 3 with a stab wound of the arm and that he had been given a tetanus shot and discharged on April 4. Defense counsel stated that he understood that the defendant had been there the following day and the court said that it would call the hospital to see if they had a record of the defendant being there on the 5th or 6th of April. A short time later the judge advised counsel that the hospital had advised him that they had checked all of the branches of the hospital and found no record of the defendant's admittance except the record of his treatment on April 3. On the afternoon of the same day, after the conclusion of the cross-examination of the first prosecution witness, counsel for the defendant made a motion for a behavior clinic examination of the defendant and renewed his motion for a continuance so that he could determine the question of the defendant's mental capacity. He stated that there were certain facts which he wanted to bring to the court's attention, and he was given leave to introduce the testimony of a police officer who testified that on April 6 the defendant was taken to the county hospital because he was suffering with delirium tremens. The hospital would

not keep him and he was sent to the mental health clinic where he remained from approximately 2 A.M. on April 6 until 8:30 A.M. At the conclusion of this testimony counsel stated that he was not prepared to go into "certain facets" of the case unless the cause was continued and unless a behavior clinic examination was ordered to see whether or not the defendant was able to co-operate with counsel. The attorney stated that he could not give the defendant the type of defense he should have unless he had further information and he stated that he needed time to talk to the doctors. The court stated that it would call Dr. Haines of the behavior clinic and ask him to examine the defendant and said that if it should develop from Dr. Haines's examination that there was something wrong with the defendant, it would cross that bridge when it came to it, but until that time they would proceed with the case.

After more testimony had been heard, Dr. Haines appeared and the trial was recessed so that Dr. Haines could examine the defendant. After the recess the court asked the doctor the results of his examination and Dr. Haines replied that in talking with the defendant he found him co-operative and that in his opinion the defendant knew the nature of the charge and was able to co-operate with his counsel. Defense counsel stated that he had asked Dr. Haines his opinion as to whether the defendant's condition at the time he was admitted to the hospital might have affected anything that the defendant might have said or done at that time and that Dr. Haines had told him that further examination of the hospital records should be made and the doctors should be questioned to determine whether or not the defendant could have made any statement with full mental capacity on April 6. The court again inquired whether the doctor was of the opinion that the defendant could co-operate with his counsel and stand trial and the doctor replied that in his opinion the defendant was able to stand trial. Defense counsel made another motion for a

continuance but the court stated that it would not grant the motion and pointed out that the defendant would have the week-end available for investigation. After further discussion between the court and counsel the case was adjourned from Friday until the following Tuesday, and the court told counsel it would subpoena any persons or records which the defendant required.

On Tuesday the prosecution's case was completed. The first witness for the defendant was a doctor who had examined the defendant at the jail hospital on April 7. He testified that the defendant showed the symptoms of delirium tremens and the doctor prescribed fluids and tranquilizers. Defense counsel repeatedly asked the doctor whether he had an opinion as to whether or not the defendant was mentally capable of knowing what he was doing or saying on April 7 and objections to this line of inquiry were repeatedly sustained. The doctor who had examined the defendant while he was in the mental health clinic also testified for the defense. She testified that in her opinion the defendant had delirium tremens on April 6. She said that when a person had delirium tremens he had all sorts of imaginary beliefs and hallucinations which would interfere with his judgment. On cross-examination the doctor stated that she had diagnosed the defendant's condition as "delirium tremens, recovered". She further stated that she found no evidence of hallucinations or psychosis at the time of her examination of the defendant and that she had formed her opinion that the defendant had delirium tremens from what he had told her. She also testified that she did not know the defendant's mental condition at the time of the trial and did not know his mental condition on the date of the crime. The defendant then testified that "to his knowledge" he had not committed the crime and testified that he had been drinking for about a week prior to the date of the crime. The first doctor was then recalled and was asked whether it was possible that the defendant had

previously suffered from delirium tremens and that the attack on April 6 was a recurrence of his previous sickness. The doctor replied that he did not know. The second doctor was also recalled and she testified that it was possible that the defendant had been suffering delirium tremens on April 2, but on cross-examination she testified that it was likewise possible that he was not so afflicted on that date.

It is well settled that a trial judge has a duty to impanel a jury to determine whether the accused is capable of understanding the nature of the charges against him and of co-operating with his counsel whenever facts that give rise to a *bona fide* doubt as to the defendant's sanity are brought to the attention of the trial court, either from observation of the defendant or from suggestion by counsel. (*People* v. *Richeson*, 24 Ill.2d 182.) The question here is whether any such facts were presented to the trial court. At no time did counsel for the defendant state that the defendant was unable to co-operate with him or was unable to comprehend the nature of the charges against him, nor did counsel ever request a sanity hearing. Counsel's motion for a behavior clinic examination was insufficient to raise a *bona fide* question as to the defendant's capacity to stand trial, (*People* v. *Cleggett*, 22 Ill.2d 471) and his suggestion that there might be a question as to defendant's mental capacity was also insufficient to raise such a *bona fide* doubt. (*People* v. *Foley*, 28 Ill.2d 426.) The only evidence bearing upon the defendant's alleged lack of mental capacity was the evidence that he had been admitted to the hospital on April 6, suffering from delirium tremens. The doctors testified that he was immediately treated and one of the doctors testified that when she observed the defendant she diagnosed his condition as "delirium tremens, recovered". There is no evidence in the record to support an inference that the condition which existed on April 6 continued to June 16, the date of the trial. The defendant admitted that he had received a copy of the indictment and knew the nature of the charge. In

our opinion the facts which were brought to the knowledge of the trial judge were insufficient to raise a *bona fide* doubt as to the defendant's sanity and the judge was not required to conduct a sanity hearing.

The defendant's second contention is that the court erred in denying the defendant's requests for continuances. We note that five weeks intervened between the time counsel was appointed for the defendant and the date the trial commenced. The case was recessed from Friday until Tuesday to enable counsel for the defendant to obtain hospital records and subpoena the doctors and the court told counsel that it would assist him in obtaining the records he desired. The hospital records were obtained and two doctors who had examined the defendant testified at the trial. The matter of continuance is within the discretion of the trial judge, and it is only in the event that the record shows an abuse of discretion on the judge's part that the conviction will be reversed. We find no such abuse of discretion here.

In addition to the points previously discussed in this opinion, the defendant argues that the evidence was insufficient to establish his guilt. In our opinion this contention has little merit. The defendant does not contend that the evidence was insufficient to establish that he committed the assault but argues that the evidence shows that he was incapable of forming the specific intent necessary for conviction because of his indulgence in alcohol prior to the crime. The only evidence bearing upon this question is the testimony of the defendant that he had been drinking heavily prior to the crime and did not remember attacking the victim, and the evidence that he suffered from delirium tremens four days after the crime. In our opinion this evidence is insufficient to raise any reasonable doubt as to the defendant's ability to form a specific intent.

Our review of the record discloses no reversible error and the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*