(No. 39462.—

The People of the State of Illinois, Defendant in Error, *vs.* Herman Magby, Plaintiff in Error.

*Opinion filed January 19, 1967.—Rehearing denied May 16, 1967.*

Ward, J., took no part.

Clement F. Springer, Jr., of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, and Patrick Tuite, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

Defendant, Herman Magby, was tried by a jury in the criminal court of Cook County, found guilty of the crime of robbery with a dangerous weapon, and sentenced to the penitentiary for a term of not less than 15 years nor more than 30 years.

On June 14, 1962, at about 12:45 A.M., Topps Restaurant, in Chicago, Illinois, was robbed by two armed men, one of whom remained in the doorway while the other confronted the owner, informed him it was a "stick-up" and demanded the money in the cash register. When the owner had complied, the robber in the doorway reminded his cohort not to forget the cash drawer adjacent to the register. As the robbers fled they were met by a police officer and, in the ensuing chase, shots were exchanged between the officer and one of the robbers. It is for this robbery that defendant was indicted and convicted.

Two and one-half months later, on October 31, two men

were arrested for another robbery at Wally's Super Market in Harvey, Illinois. One of them implicated the defendant in this crime also; he described him, gave his place of employment, the approximate location of his residence, and warned the police that he carried a gun. Acting on this information, the police immediately went to defendant's place of employment, discovered he was off work for that day, went to the housing project where they had been informed he lived, located his apartment and arrested him. In the process they seized a pistol belonging to defendant and a newspaper, dated June 15, 1962, containing a report and description on the front page of the Topps Restaurant robbery. On that same day the defendant was identified at the police station by the owner of the restaurant, a cook, a waitress and the police officer who had tried to apprehend him. Subsequently, a motion to suppress the gun and the newspaper was denied and at the trial they were introduced and admitted in evidence.

Defendant contends: (1) that his constitutional rights were violated in that his arrest and the search of his residence were made without warrants, (2) that the gun and newspaper were not relevant to the crime for which he was charged and their admission in evidence was improper and highly prejudicial, (3) that his identification by eyewitnesses was questionable, (4) that the final argument of . the State's Attorney was highly inflammatory and prejudicial, and (5) that the trial court committed reversible error in refusing to grant a continuance to enable him to present a key witness and in refusing to permit him to reopen his case to present the testimony of such witness.

At the hearing on the motion to suppress, a police officer testified that he and his fellow officers had acted upon the information furnished him by the man they had arrested in connection with the Super Market robbery; that after ascertaining the exact location of defendant's apartment they proceeded to the 12th floor of the building, met defendant's

wife as she was entering the apartment, identified themselves and asked for defendant. She called to her husband; they walked in with her and defendant was in the kitchen in his robe and underwear. They informed him he was under arrest for the Super Market robbery and asked him to get dressed. In the bedroom he admitted knowing the two men already arrested, and, when the officers said that they knew he had a pistol and that they would get a search warrant if necessary, he told them that the gun was in the 3rd drawer of his dresser. It was found therein, lying on a folded newspaper, and when the officer noticed that the paper carried a story on the front page of the Topps Restaurant robbery, he took it together with the gun. The gun was found to be fully loaded with a bullet in the chamber. Defendant testified that when his wife called to him that some men were there to see him, he started to the hall to meet them, that they asked him about the Super Market robbery, took him to the bedroom and that four or five detectives then started to search his apartment without his consent. He stated he didn't know anything about the newspaper in question as there were lots of newspapers around the house which had been used in moving in just three days before. Mrs. Magby testified that after she had called to her husband the officers went by her into the apartment and proceeded to search every room.

Although the principal arguments advanced in the briefs of both the defendant and the State are concerned with the question of whether the search and seizure can be upheld as incident to a lawful arrest without a warrant, we find it unnecessary to consider this question. The police officer testified that the police were admitted to the apartment by Mrs. Magby without objection. The officer testified that he told the defendant "If you don't care to let us search, we'll get a search warrant. You do whatever you want." It was after this statement that the defendant told the officer where he could find the gun. A search by consent

is a complete waiver of constitutional rights. (*People* v. *DiGerlando,* 30 Ill.2d 544.) While the testimony of the defendant and the officer are in conflict, the officer's testimony is sufficient to show that when defendant was advised that he need not consent to a search because the officers could obtain a search warrant, he elected to disclose the location of the gun. And when the officer opened the dresser drawer indicated by the defendant, he was not required to disregard the newspaper which was in plain view. There is sufficient evidence of consent and there was no error in denying the motion to suppress.

Defendant's next contention that the gun was inadmissible in evidence, as there was no showing that it was the gun used in committing the crime charged, is not well taken. It has long been established that it is competent to prove that an accused person, when arrested, possessed a weapon suitable for the commission of the crime charged, even though no claim is made that he actually used it in committing the particular crime. (*People* v. *Lenhardt,* 340 Ill. 538; *People* v. *DePompeis,* 410 Ill. 587; *People* v. *Gambino,* 12 Ill.2d 29.) Likewise, the newspaper clipping, three and one-half months old, found in defendant's dresser drawer, and describing the robbery for which he was being tried, has such sufficient and legitimate probative value as to be admissible. (*People* v. *Moore,* 35 Ill.2d 399.) Whether such items might be taken to the jury room rested in the sound discretion of the trial judge and his decision in that regard should not be disturbed in the absence of an abuse of that discretion to the prejudice of defendant. (*People* v. *Ciucci,* 8 Ill.2d 619; *People v. Allen,* 17 Ill.2d 55.) We find no such abuse of discretion or prejudice here.

At the trial defendant testified and denied that he had participated in the robbery, stating that he had spent that evening at a neighborhood tavern drinking with friends from 9:30 P.M. to 2:00 A.M. He argues that his identification by eyewitnesses was of doubtful value, but his argu-

ment belies the facts. On the day of his arrest he was picked out of a line-up by the owner of the restaurant and the police officer with whom he had exchanged shots. Two other employees identified him at the police station, picking him out of a room containing 15 or 20 people. Though the officer caught only a brief glimpse of defendant on the night of the robbery, the other three witnesses had an ample opportunity to observe him during the robbery as he was in close proximity to each of them for at least five minutes. Each of them was positive in his identification both before and at the trial. We therefore find that the matter of identity was properly a question for the jury and sufficient to support his conviction. *People* v. *Soldat,* 32 Ill.2d, 478.

Defendant next contends that the final argument of the State's Attorney was highly inflammable and prejudicial in certain references and innuendoes made about one of defendant's witnesses. This witness was an assistant cook at the restaurant and he testified that defendant was not one of the robbers. However, it was brought out that immediately after the robbery he stated he would not be able to identify the robbers; that he was an admitted friend of the defendant and for two years had been meeting defendant twice a week at a local tavern where they sat and talked and drank together; that not until after he was fired in February of 1963 did he let anyone know that he was a friend of defendant. These facts were mentioned in the final argument and the inference was drawn that perhaps it was through this relationship that the robbers knew about the money contained in the drawer apart from that in the cash register. Such argument is within the scope of permissible comment for it has a basis in the evidence and the inference is a legitimate one under the circumstances. *People* v. *Heidman,* 11 Ill.2d 501.

Defendant next urges that the trial court erred in refusing to grant him a continuance to allow for the presence of a witness, and, after resting his case, in refusing to per-

204

mit him to reopen to present the testimony of this witness.

With respect to the court's refusal to grant a continuance it is readily apparent that the defendant was granted every concession consistent with orderly trial procedure. He had been indicted eight months prior to trial, his motion to suppress was heard on one day, a jury was empanelled on the next day and the case then continued to the following day. When the State completed its case on the morning of this third day defendant's request for a continuance for two more days was granted and at the close of his evidence a further short recess was allowed for the appearance of the witness in question. It was only then that the court refused to grant a further continuance. During all of this time defendant made no effort to supply a supporting affidavit as to the materiality of the witness or the reason for his absence as provided by the act regulating continuances. (Ill. Rev. Stat. 1963, chap. 38, par. 738.) Nor does it appear that such witness was a nonresident or difficult to locate. Rather, he was a local resident and only one of several individuals with whom defendant said he spent the night of the robbery; and no one of such witnesses was produced at the trial. In view of such a complete lack of due diligence in procuring the attendance of his witnesses, defendant was not entitled to a further continuance. (*Dacey* v. *People,* 116 Ill. 555.) Nor did the refusal to grant a further delay constitute an abuse of the trial court's discretion. *People* v. *Harper,* 31 Ill.2d 51; *People* v. *Martin,* 376 Ill. 569.

After defendant had rested his case at about 11 :00 A.M. the State was granted a recess until 2 :00 P.M. to produce a rebuttal witness on a subject other than defendant's alleged presence at a tavern on the night of the robbery. Defendant's witness was then present and he asked permission to reopen and present his testimony or to take the stand in rebuttal. Both requests were refused. Perhaps not every judge would have so decided, but in the light of the above circumstances we do not believe such action consti-

tuted such a clear abuse of discretion as to necessitate a reversal. *People* v. *Siciliano,* 4 Ill.2d 581.

We find the evidence of defendant's guilt clear and convincing and, there being no prejudicial error in the trial, the judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.