THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VICTOR P. OLIVER, Defendant-Appellant.

(No. 55398;

First District—May 5, 1972.

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Thomas R. Mulroy, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Armed robbery. Ill. Rev. Stat. 1967, ch. 38, par. 18—2.

*JUDGMENT*

After a bench trial, defendant was found guilty and sentenced to a term of one to three years.

*CONTENTIONS RAISED ON APPEAL*

1. The trial court erred in refusing to suppress evidence of a pre-trial identification of defendant.

2. Defendant was not proved guilty beyond a reasonable doubt.

*EVIDENCE*

*James Burns,* for the State:

He is a route salesman for a baking company. On March 29, 1968, at about 10:45 A.M., he went into one of the stores on his route which was located in the 1300 block of S. Fairfield. He was talking to the owner in the rear of the store when another man walked in and stood beside him. Assuming that the newcomer was a customer, the owner went be-

hind the counter to wait on him. As Burns turned to leave the store, the man grabbed him, put a pistol to the back of his head, forced him to lie face down on the floor, and went through his pockets, taking a wallet, some dollar bills and loose change, and a pearl-handled pocket knife which had a scratch on the handle. The man then warned Burns to stay where he was, and, facing him with the gun, backed out of the store. Burns had a clear view of the man's face and "a good look at him" for the 20 or 30 seconds it took him to back out of the store.

About a week later, an officer phoned Burns' home and left a message saying that they had arrested a man who was going to be in Felony Court that day; that they wanted him to see if he could identify the man, as they thought he might be the same one who had committed the robbery in Burns' case. Burns complied with the request and was present in a crowded courtroom when a bailiff brought a group of men before the bench. As names were called, other men approached the bench and joined the group, as did "a bunch of lawyers." When asked by an officer if he could identify one of the men in the group as the person who had robbed him, Burns indicated Victor Oliver, defendant in the instant case.*

Burns also made an in-court identification of defendant as the man who had robbed him.

*Otto Kral*, for the State:

He has been an officer with the Intelligence division of the Chicago Police Department for six years. On April 3, 1968, he was watching a vehicle which fit a reported description of a car which had been involved in a robbery (other than the robbery of James Burns). He had been given a description of both the car and the wanted man. While maintaining his surveillance of the car, a man who also fit the description he had received, came along and got into the car. The witness stopped the car and arrested the man, whom he identified in court as the defendant in the instant case. At the station house, when defendant was asked to empty his pockets, the items found were a wallet, a handkerchief, and a pearl-handled pocket knife with a scratch near the top of the handle.

*Victor Oliver*, in his own behalf:

Defendant testified that he had been the maintenance man for Miller's Nursing Home from January, 1967, until July, 1969. His hours were from 8:00 A.M. to 4:00 P.M., with a half-hour lunch break at 11:00 A.M., Monday through Friday. His mother worked there, too, and he walked her to work. On March 29, 1968, he worked his normal hours and ate

---

* Defendant was arrested on April 3 for a robbery other than the March 29, 1968, robbery of James Burns. Burns' identification of defendant took place when defendant appeared in court on this other robbery charge. After obtaining a conviction in the instant case, the other robbery charge was dropped by the State's Attorney.

lunch at the usual time. He did not go to the store at 1335 S. Fairfield where the robbery of James Burns occurred, and he did not rob Burns. He knew the area, as his mother-in-law lived upstairs over that store which is about seven or eight blocks from the nursing home.

He was arrested for robbery (other than the instant robbery) on April 3, 1968. While in custody, he was brought in front of a judge for a preliminary hearing. He, the bailiff, and a police officer were the only people before the bench. That was the only time he appeared in that courtroom.

*Margaret Miller,* for the State in rebuttal:

She is personally acquainted with the 17 people she employs in her capacity as owner of Miller's Nursing Home. She knows defendant because his mother works for the home and he sometimes walked her to work. However, she denied ever having employed him, and she is the only person responsible for the hiring and firing of employees for the home.

*OPINION*

Defendant first contends that the in-court identification by Burns at the trial was inadmissible since it was based on an earlier identification which was the product of improper suggestion. He complains of two specific improprieties in that connection: (1) a suggestive telephone message asking the complaining witness to come to the Felony Court and make an identification; (2) the absence of counsel during the observation of defendant by the complaining witness in the courtroom, and the unfairness of what defendant claims amounted to a suggestive one-man show-up procedure when he was identified at that time.

Burns testified that he was not at home when the police phoned, but he recalled that the message left for him was "they arrested the man and they would like me to come down and identify him. It was possible it was the same man in my case." Defendant argues that the language of the message conditioned Burns to believe that he was, for certain, going to view his assailant when he went to the courtroom.

■■ These facts are similar to those of *People v. Wooley,* 127 Ill.App.2d 249, 254, 262 N.E.2d 237, 239. In that case, the complaining witness testified that the police called to ask him to come down to the station house as "[t]here is a good possibility that they may have the fellow that held us up." The court found that no prejudice resulted from the message, and cited *People v. McIntosh,* 82 Ill.App.2d 90, 94, 227 N.E.2d 76, 78, which noted that whenever a witness is asked to come to view persons arrested, there is going to be an unavoidable intimation that the police have arrested someone they believe might have been the perpetrator of the crime. Any other construction of a police request to attend a line-up, for example, would make absolutely no sense. In the instant

case, the police were merely informing Burns of the fact that they had arrested a man in another matter, and that he might also have been the robber in Burns' case. We find that defendant was not prejudiced by the manner in which the police notified the complaining witness to appear for a possible identification.

Defendant next asserts that he was wrongfully denied his right to counsel prior to and during the observation of him by Burns in Felony Court. Presumably, since defendant bases this argument upon the holdings in *U.S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, and *People v. Gilbert*, 388 U.S. 263, 87 S.Ct. 1951, he is likening the felony courtroom confrontation to a line-up. Each of the *Wade* and *Gilbert* cases involved a line-up which was conducted after a defendant had been arrested and after counsel had been appointed for him. (While defendant had been under arrest in our case, he had not been arrested for the instant charge.) In each case, defense counsel was not informed of, nor present at, the line-up. The Supreme Court held that a line-up was a critical stage of criminal proceedings, and that a defendant was entitled to the presence of his counsel. Alternatively, defendant contends that the occasion in the courtroom was not a line-up, as he was the only person, other than the bailiff and an officer, standing before the judge when the identification took place. In this regard, we think it clear from the record that the trial judge accepted the credibility of Burns, rather than that of defendant, as to there having been a group of men brought before the bench at one time. Be that as it may, we believe there are two reasons, either one of which would prevent reversal on this point in their aspect.

■■ The Illinois courts have consistently held that *Wade* and *Gilbert* apply only to post-indictment confrontations. (*E.g., People v. Palmer*, 41 Ill.2d 571, 572, 244 N.E.2d 173, 174.) See also *People v. Cesarz*, 44 Ill.2d 180, 184, 255 N.E.2d 1, 4, which is essentially similar in its facts to the instant case if we accept Burns' version of the felony court confrontation. However, even if the principle of *Palmer* were not to be accepted, and even if defendant's version of his felony court appearance were to be taken as true, and, further, that it be considered to have been an unfairly suggestive confrontation, the ground for admissibility of the in-court identification by Burns is preserved by its prior independent origin at the time of the robbery. See *People v. McMath*, 104 Ill.App.2d 302, 314, 244 N.E.2d 330, 336, affirmed 45 Ill.2d 33, 36, 256 N.E.2d 835, 837, *cert.* denied 400 U.S. 846; and *People v. McMillan*, 123 Ill.App.2d 232, 237, 260 N.E.2d 70, 73, and cases there cited.

■■ As to defendant's last contention, we have examined all of the evidence, and we conclude that there was proof which, if believed by the

trial judge, as it was here, was sufficient to prove defendant guilty beyond a reasonable doubt.

■■■ Defendant was positively identified by an eyewitness who was also the victim of the crime, and had adequate opportunity to observe. The testimony of one witness alone, if he is credible and if his testimony is positive, is sufficient to convict, even though his testimony is contradicted by the accused. (*People v. Harris,* 70 Ill.App.2d 173, 179, 217 N.E.2d 503, 506-507.) And, on the face of the record, one reason for viewing defendant's testimony with suspicion is the way in which his alibi testimony was so conclusively rebutted by his supposed employer. In any event, the question of the credibility of the witnesses is a matter for the trial court. *People v. Williams,* 75 Ill.App.2d 50, 59, 221 N.E.2d 48, 52-53.

The judgment is affirmed.

Judgment affirmed.

LORENZ, P. J., and DRUCKER, J., concur.