THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALONZO HAMPTON, Defendant-Appellant.

(No. 57647;

First District (5th Division)—September 7, 1973.

428

James J. Doherty, Public Defender, of Chicago, (Jean Essary, Assistant Public Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis, William K. Hedrick, and John C. O'Rourke, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSE CHARGED

Possession of a narcotic drug. Ill. Rev. Stat. 1969, ch. 38, par. 22—3.

JUDGMENT

After a bench trial, defendant was found guilty of the offense charged and was sentenced to a term of not less than two nor more than six years.

CONTENTIONS RAISED ON APPEAL

1. Section 402(b) of the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1402(b)) is unconstitutionally vague in that it does not allow a defendant to ascertain before trial whether he is being charged with a misdemeanor or a felony, and section 402(b), coupled with section 408 of the same act, denies a defendant equal protection of the laws because section 408 (the enhancement-of-penalties provision for a second or subsequent offense) could work an inequality on two defendants arrested for the same conduct and charged with the same offense.

2. The trial court erred in denying defendant's motion to suppress the evidence or, in the alternative, in refusing to order the informer to appear at an in camera preliminary hearing.

3. Defendant was denied his due process rights due to certain errors which occurred during the course of the trial.

4. Defendant was not proved guilty beyond a reasonable doubt.

5. The sentence imposed was excessive.

EVIDENCE

*James Arnold,* for the State:

(He testified at the hearing on the motion to suppress, and that testimony was subsequently accepted as evidence at trial by stipulation.)

He is a police officer in the Narcotics Unit. On February 22, 1971, he received a telephone call from an informant (whose identity was not disclosed at either the preliminary hearing or the trial) who stated that he had some information. The witness and two other officers, King and Jackson, drove to 35th and State Streets to meet the informant and were told by him that he had purchased a bag of heroin from defendant 20 minutes earlier in a liquor-grocery store at 35th and Indiana. The informant described the seller as a male Negro known as "Alonzo with the fur hat," and stated that Alonzo had additional tin-foil packets in a brown envelope. The witness did not search the informant, and he did not ask him to show the narcotics he had purchased. The witness knew this informant as he had previously supplied the police with 10 tips which had resulted in seven convictions. In fact, the informant had pointed out this same defendant to the witness a few days earlier on 35th Street. At one time, the informant had been a drug addict, but he did not appear to be under the influence of narcotics at the time in question.

The officers drove to 35th and Indiana and saw defendant, previously known to them as Alonzo, inside the store wearing a Russian-type fur hat. The witness identified himself to defendant, told him what the informant had said, and arrested him. He patted defendant down, but found no narcotics. There were a number of people in the store, and so the officers took defendant across the street to a gasoline service station. The witness walked next to defendant, while the other two officers walked behind them. As the witness opened the door to the station washroom, he saw a brown envelope fall from defendant's left hand or sleeve. Officer Jackson picked up the envelope.

He did not know where the informer went after their meeting at 35th and State, but the informer was not present at 35th and Indiana when defendant was arrested.

He made out a police report after the arrest, but the report did not mention the informant's telephone call or subsequent description of defendant.

*Wayne King,* for the State:

(His testimony at the hearing on the motion to suppress was also admitted as evidence at the trial by stipulation.)

He is a police officer. On February 22, 1971, his partner, Officer Arnold,

received a telephone call from an informant. He and Officers Arnold and Jackson drove to 3500 S. State to meet with the informer who revealed that he had just bought some heroin from Alonzo at 3500 S. Indiana. The informant said that Alonzo was wearing a heavy coat and a fur hat.

He and the two other officers drove to 35th and Indiana, identified themselves to defendant, and placed defendant under arrest. They gave defendant a pat-down search, but found no weapons. They walked defendant across the street to a service station for a more extensive search. As they approached the washroom door, he saw something fall from defendant's left hand or sleeve. Officer Jackson picked up the object which had fallen. He and Officer Jackson looked into the object and found nine tin-foil packets containing a white substance. They sealed the packets in an evidence envelope, and the witness accompanied Officer Jackson who carried the envelope to the crime laboratory for analysis.

*Stipulation*

Dorothy Water, a chemist at the crime laboratory, would testify that on February 22, 1971, Officers King and Jackson submitted to the laboratory a sealed envelope containing nine packets allegedly taken from defendant that day. The foil packets contained tan powder. The powder in two of the packets was tested and found to be heroin. The first amount tested weighed .71 grams and the second weighed .63 grams.

*Alonzo Hampton,* in his own behalf:

On February 22, 1971, at about 7:00 P.M., he and a friend had been drinking for about 30 minutes in a liquor store at 35th and Indiana when Officers King and Jackson approached him, showed him their badges, and placed him under arrest. He had not spoken to anyone other than this friend or the waitress for the entire 30 minutes he was in the store. The officers told him to put everything he had in his pockets on the counter, which he did, and then they patted him down. Officer King started to leave, but came back and said, "Wait a minute, we will take him (defendant) across the street and have him strip." After they walked across the street to a service station, Officer King picked up something and said, "This is what I am looking for." The officers took him back across the street to the squad car and then to the police station.

His friend was present when the police patted him down in the liquor store, but was not present when the officers took him across the street and allegedly found the contraband. The police did not search his friend.

He did not throw or let drop any envelope from his hand or sleeve.

*Police Officer Wayne King,* for the defense (having previously testified for the State):

He did not know whether the package taken from defendant had been submitted to an analysis for fingerprints.

OPINION·

Defendant first contends that section 402(b) of the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1402(b)) is unconstitutionally vague.* That section provides:

"Except as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled substance. Any person who violates this Section with respect to:

\* \* \*

(b) any other amount of a controlled substance [less than 30 grams] is guilty of an offense and upon conviction shall be *imprisoned in a penal institution other than the penitentiary for not more than one year or in the penitentiary from one to 8 years, and fined not more than $15,000.*" (Emphasis added.)

Defendant points to the language of the statute emphasized above and asserts that the statute is vague because it fails to give notice of whether the charge is a felony or a misdemeanor. (See the definitions of "felony" and "misdemeanor" (Ill. Rev. Stat. 1971, ch. 38, pars. 2—7 and 2—11).) Defendant contends that he was prejudiced thereby because: (1) he did not know he could be sentenced as a misdemeanant and was, therefore, precluded from taking part in any effective plea bargaining; and (2) he was not aware of the enhancement of penalties provision which allowed for the possible doubling of a second offender's sentence.

■■ Defendant's assertion concerning his being precluded from plea bargaining is without merit. Although the practice of plea bargaining is commonplace, we can find no authority which gives an accused a constitutional, statutory, or other lawful right to bargain for a conviction for a lesser offense or penalty. (*People v. Marshall,* 112 Ill.App.2d 426, 251 N.E.2d 326.) In addition, see *Newman v. United States,* 382 F.2d 479, and *United States v. Dalton,* 465 F.2d 32, where the court rejected defendant's claim of denial of due process and equal protection on the ground that the government accepted pleas from some codefendants without affording defendant the same opportunity.

■■ Defendant's assertion as regards his lack of knowledge of the enhancement of penalties provision (Ill. Rev. Stat. 1971, ch. 56½, par. 1408) is also without merit as the applicability of that provision does not depend upon whether defendant is convicted of a felony or a misdemeanor, but relate only to the applicable penalty depending upon whether defendant had previously been convicted of an offense concerning a controlled substance. Besides, defendant was represented by privately retained counsel who, presumably, informed him of the possibility of plea bargain-

---

* Ill. Rev. Stat. 1969, ch. 38, par. 22—3, with which defendant was originally charged, was repealed and replaced by Ill. Rev. Stat. 1971, ch. 56½, par. 1402(b).

ing and the potential penalties involved, including the enhancement-of-penalties provision. Because defendant had adequate notice of the offense with which he was charged and the possible sentences that could be imposed upon conviction, including a felony penalty, his constitutional rights were not infringed in any way. *People v. Hanson,* 53 Ill.2d 79, 289 N.E.2d 611.

■■ Defendant then asserts that section 402(b) of the Controlled Substances Act is unconstitutional as it deprives a defendant of the equal protection of the law. Defendant's argument is two-pronged. He first contends that the statute must fall because it provides two different penalties (a penitentiary sentence and a non-penitentiary sentence) for the same offense. This argument is without merit. The statute involved specifically. provides a wide range of alternative sentences so as to conform to the legislative intent that sentencing be individualized. (Ill. Rev. Stat. 1971, ch. 38, par. 1—2(c).) It demonstrates how far the law has moved from the Gilbert-and-Sullivan concept that we should "let the punishment fit the crime," rather than the criminal. The trial judge, then, is invested with complete judicial discretion to impose any sentence within the various limits fixed by the statute. (*People v. Riley,* 376 Ill. 364, 33 N.E.2d 872.) Therefore, because the different factors which go to determine a sentence, such as prior criminal record and rehabilitation potential, may vary with each defendant, equal protection is not denied if one defendant receives a more severe sentence than another even though both defendants may have been arrested for the same conduct and charged and convicted for the same offense. See *People v. Queen,* 326 Ill. 492, 158 N.E. 148, where defendant urged unsuccessfully that equal protection had been denied him when he received a penitentiary sentence where an alternative reformatory sentence could have been imposed under the statute in question.

Secondly, defendant argues that equal protection is violated by section 402(b) when it is coupled with section 408 of the same act, which provides for an enhanced penalty of up to twice the maximum otherwise authorized if the defendant is a second or subsequent offender. Defendant explains that a second-offender defendant given a penitentiary sentence is a felon, and the enhancement-of-penalties provision is applicable to him because the enhanced penalty would still be a felony sentence. Likewise, a second-offender defendant who is given a non-penitentiary sentence of six months or less is a misdemeanant, and the enhancement-of-penalties provision can be applied to him because the enhanced sentence of one year or less would still be a misdemeanor sentence. However, a defendant for whom a non-penitentiary sentence in the range between six months and a year might be considered appropri-

ate, is also a misdemeanant, but if he is a second offender, the enhancement-of-penalties provision could not be applied without changing the status of his criminality, because the enhanced sentence in such case might then exceed a year, and, by definition, his sentence would become appropriate only to a felony. (Ill. Rev. Stat. 1971, ch. 38, par. 1—7(f).) Defendant argues, then, that equal protection is denied because section 408 cannot apply uniformly to all defendants convicted under section 402(b).

■■ Ingenious as it is, we cannot concede merit to defendant's argument. The non-uniformity of which he complains is based on the fact that he labels a second-offender defendant as a misdemeanant if, before the application of the enhancement of penalties provision, a misdemeanor sentence is imposed. Such is not the case. The labeling of a defendant as a misdemeanant or a felon is strictly ephemeral, being dependent upon the sentence actually imposed, and not considered merely preliminary in the mind of the judge. And in the case of a second offender whose sentence is statutorily eligible for enhancement, it is only the final sentence entered of record which is determinative.

Defendant then contends that his motion to suppress the evidence should have been sustained because his arrest was based on a noncredible informer's tip and was, therefore, unlawful, or, at the very least, the court should have ordered the informer to appear at an in-camera preliminary hearing for cross-examination. Defendant asserts that the credibility of the informer was suspect because he was or had been a drug addict and because he said he had purchased narcotics from defendant 20 minutes before meeting the officers but never showed those drugs to the officers.

■■ An arrest by a police officer without a warrant is proper if the officer has reasonable grounds to believe that an offense has been committed, and that the person to be arrested committed it. Such reasonable grounds may be supplied by information from an informer of established reliability. (*People v. Durr*, 28 Ill.2d 308, 192 N.E.2d 379.) In the instant case, both officers testified at the hearing on the motion to suppress that the informant had previously furnished the police with 10 tips, seven of which had resulted not just in arrests and prosecutions, but in convictions. Also, the informant's tip was in part corroborated when the information supplied concerning defendant's description and location proved to be accurate. Such evidence has been found adequate to establish an informer's reliability. *People v. Wright*, 42 Ill.2d 457, 248 N.E.2d 78; *People v. Wilson*, 45 Ill.2d 581, 262 N.E.2d 441.

Defendant cites several cases in which Officer Arnold had been the arresting officer on a narcotics charge (as he was in the instant case)

and which were subsequently reversed because his testimony at trial had been inconsistent with his preliminary hearing testimony. From this, defendant argues that the motion to suppress should have been sustained or, alternatively, that the informer should have been required to appear because his reliability was predicated upon Officer Arnold's credibility which had been suspect on prior occasions.

■■ It was for the trial judge to determine the credibility of Officer Arnold as well as all other witnesses, and then to decide if the acceptable facts justified police reliance on the informant. (*People v. McCray*, 33 Ill.2d 66, 210 N.E.2d 161, *aff'd*, 386 U.S. 300, 87 S.Ct. 1056.) We find no reason to overturn the trial judge's favorable determination of Officer Arnold's credibility in this case. Since reasonable grounds for defendant's arrest were furnished by a reliable informer, defendant was lawfully arrested, and the court did not err in denying defendant's motion to suppress.

■■ Further, the court did not err in failing to order the informer to appear at an in camera preliminary hearing because *People v. McCray*, 33 Ill.2d 66, 210 N.E.2d 161, *aff'd*, 386 U.S. 300, 87 S.Ct. 1056, established that where the issue is not one of guilt or innocence but, as here, a question of probable cause for arrest, the police need not disclose the informant's identity if the trial judge is convinced that the police relied in good faith upon credible information supplied by a reliable informant. See also *People v. Quinn*, 2 Ill.App.3d 341, 276 N.E.2d 379.

■■ Defendant contends that he was denied the right to a fair trial in four specific instances. He first argues that even if the informant did not have to appear at the hearing on the motion to suppress, defendant had the right to confront the informant, his accuser, at the trial and learn his true identity. We cannot agree. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, established that where the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair trial, the government's privilege to withhold disclosure of the informer's identity must give way. However, in this case, the informer did not participate in the police action resulting in defendant's arrest, nor was he present at the scene of the arrest and search. Since his testimony would not have been relevant, the court did not err in refusing to order that the informant be produced at trial.

The police report made out by Officer Arnold after he arrested defendant recited, "* * * on 22 February, 1971, the undersigned met with a very reliable police informer at 35th and State Street at about 1825 hours [6:25 P.M.] * * *. This informer stated to officers that he bought a package of stuff (heroin) from Alonzo about twenty (20) minutes prior to meeting with officers at 35th and Indiana Avenue * * *." The report

did not mention that the informant had pointed out defendant to the officers several days before, telephoned the officer before meeting with him, or described defendant as "Alonzo with the fur hat," even though Officer Arnold testified from memory as to those specific matters at the trial a year later. It is apparent that defense counsel brought out the fact that these specific details had been omitted from the report in an attempt to impeach Officer Arnold's testimony. Defendant contends here that the court erred in not allowing that officer's testimony to be impeached by these omissions.

■■ It is true that a witness' testimony may be discredited if it is shown that the witness failed to assert a fact when it would have been natural to assert it. (*People v. Henry*, 47 Ill.2d 312, 265 N.E.2d 876.) However, in the instant case, the police report did state that the officers had met with an informer who told them that he had just bought narcotics from defendant. We find that, under the circumstances of this case, enough pertinent information was recorded in the report so that the failure to state other specific facts was not significant. Assuming that the omission had some significance, it still would bear upon the issue of the witness' credibility which was a matter for the trial judge to determine. All of the contradictions were before the court, and since he obviously gave credence to the rest of the officer's testimony, he could not have considered the officer's credibility to have been substantially diminished.

After the State's witnesses and defendant had testified, defendant asked for a continuance so that he could produce as a witness the friend who had been with him in the tavern at the time he was arrested. The court asked that defendant bring in the witness the following morning, and at that time, when the witness failed to appear voluntarily and the lawyers were trying to arrange a suitable continuance date, the trial judge said, "It will take you two minutes to write down F.G. [finding guilty]." Defendant argues that his right to a fair trial was denied when the trial judge expressed his belief that defendant was guilty prior to his hearing closing arguments. The State theorizes that the trial court was merely commenting upon the length of time that would be needed to dispose of the case on the continuance date. For whatever the reason behind the comment, even if it had been made with respect to defendant's guilt, the error would be harmless. Defendant had already testified that his friend had not been present when the police allegedly found the contraband so that the trial court knew that the witness' testimony would not be relevant. Therefore, all of the relevant evidence had been heard (the closing arguments not being evidence), before the judge made his comment, and defendant was not prejudiced thereby.

· The last trial error of which defendant complains is that the court

erred in failing to allow defendant a continuance to produce the witness alluded to in the paragraph next above. Defendant was indicted on January 12, 1972, and the trial did not begin until April 27, 1972. On the latter date, the court allowed an overnight continuance to bring in the witness. When the witness failed to appear the next morning, the court decided to proceed with the case, commenting that there had been four prior occasions on which defendant could have produced the witness had he so desired. It is apparent from the record that defendant was given ample opportunity to present his defense, and the refusal of the court to grant a further continuance was not error. (*People v. Magby,* 37 Ill.2d 197, 226 N.E.2d 33.) Also, we must again note that the trial court was aware that the testimony of this particular witness would have been irrelevant, and that the refusal of the court to grant a continuance for the production of that witness was not prejudicial to defendant.

Defendant next contends that he was not proved guilty beyond a reasonable doubt because no proper chain of custody with respect to the narcotics was shown and because the testimony of the police officers was inherently incredible.

■■ The record shows that after the testimony of the crime laboratory chemist was stipulated to, the State's Attorney said, "* * * at this time I would seek to introduce the evidence, the narcotics into evidence through way of stipulation, also, Mr. Gensen [defense counsel], as we testified to in the chain, which was stipulated to." When the defense attorney said, "So stipulated," he affirmed that he had previously stipulated to the chain of possession of the narcotics evidence, and defendant cannot now raise this issue on appeal. (*People v. Holloman,* 46 Ill. 2d 311, 263 N.E.2d 7.) However, even if the chain of evidence had not been stipulated to, we find that a proper chain of custody with respect to the narcotics was established. As to the "inherent incredibility" of the testimony of the two police officers, we have commented above that credibility of witnesses is a matter for the trier of fact. *People v. Oliver,* 5 Ill.App.3d 860, 284 N.E.2d 369.

We conclude that the believable evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant's last contention is that his sentence was excessive. Although defendant maintains that the trial judge misunderstood and so did not adhere to the intent of the sentencing provisions of the Controlled Substances Act, we need not decide that issue because those sentencing provisions are no longer applicable.

■■ The offense of possession of less than 30 grams of a controlled substance is now termed a Class 3 felony under the Unified Code of Corrections, effective January 1, 1973 (Ill. Rev. Stat., (1972 Supp.), ch.

56½, par. 1402(b)), for which the penalty can be any term in excess of one and not exceeding 10 years. (Ill. Rev. Stat. 1971, ch. 38, par. 1005——8——1(b)(4).) In the hearing on aggravation and mitigation, it was brought out that defendant had three prior narcotics convictions, two for possesssion and one for sale. Considering defendant's prior record, the sentence of two to six years which was imposed is a proper one, being within the statutory time limitations and confronting to the 1:3 ratio required by the Code (Ill. Rev. Stat. 1971, ch. 38, par. 1005——8——1(c)(4)).

The judgment is affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.