836

The People of the State of Illinois, Plaintiff-Appellee, *v.* Robert Nickson, Defendant-Appellant.

(No. 58325;

First District (5th Division)—September 13, 1974.

James J. Doherty, Public Defender, of Chicago (James N. Gramenos, Edward Nemetz and William Pearlman, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Perry L. Fuller, Dennis J. Horan, and E. Michael Kelly, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of possession of a controlled substance in violation of Ill. Rev. Stat. 1971, ch. 56½, par. 1402(b), and sentenced to a term of 3 to 8 years.

On appeal, defendant argues that (1) the petition to quash his arrest and suppress evidence should have been granted, because the arrest and search were made without warrants and were based upon information supplied by an informer whose reliability was not proved; (2) the informer should have been required to appear at the hearing on the petition to quash the arrest and suppress evidence; (3) a statement should have been made by the court as to the findings of fact and conclusions of law upon which it based its denial of defendant's motion to suppress; (4) the evidence did not sufficiently establish the substance recovered was a narcotic; and (5) the evidence failed to establish his guilt beyond a reasonable doubt.

The following facts were testified to at the hearing on the petition to quash the arrest and to suppress evidence: On August 23, 1971, at ap-

proximately 12 P.M., an unidentified informer voluntarily came to police headquarters and gave information to Officers Jackson and Mitchell concerning the activities of one "Greasy Bob", later identified as defendant, a drug seller operating in the area of 43rd and King Drive. Jackson testified that he had known this informer for approximately 14 months and had received information from him on four prior occasions concerning narcotics activity. On each of these occasions narcotics were recovered and arrests were made, which resulted in one conviction and three pending cases in court. Jackson also testified that pursuant to an arrangement with the informer, he and Mitchell met the informer at approximately 2:30 P.M. in the vicinity of 44th and Vincennes, where the informer told them he had purchased a quantity of heroin from Greasy Bob about 45 minutes earlier. The informer was not searched and did not display any narcotics, because he said he had used the purchase. He told the officers that Greasy Bob still had heroin in his possession in a "Stanback" [1] package.

The officers and the informer then cruised the immediate area in a squad car and, after a period of time, at 45th between Vincennes and King Drive, the informer pointed out Greasy Bob. Jackson testified that he and Mitchell left the car and followed Greasy Bob to 4346 King Drive, where he entered the basement of a two-story building by the side entrance. The basement door was open, and as he and Mitchell entered, he called out, "Greasy Bob," and announced his office. At that point, Jackson stated defendant dropped a small package to the ground. Subsequent examination revealed the package to be a Stanback package containing two tinfoil packages with a white powdered substance inside (later established to be heroin). Defendant was then arrested.

Officer Mitchell testified he had known the informer for only about a week prior to August 23, 1971, and had never previously received any information from him. When he and Jackson met the informer at 44th and Vincennes, it was approximately 11:45 A.M. The informer told them he had purchased heroin from Greasy Bob 45 minutes earlier and that Greasy Bob was carrying more heroin in a Stanback package. They drove until approximately 2:30 P.M., at which time the informer pointed out Greasy Bob. He and Jackson walked toward defendant, who turned into a gangway at 4346 King Drive and then into the basement of that building, pushing the door behind him. As they followed him inside, Mitchell, who had his badge in his left hand and his weapon in his right hand, announced his office and showed his badge and then searched him.

---

[1] A commercial non-prescription headache remedy sold in a yellow and blue package.

Defendant testified he lived in the basement of a four-story building at 4346 King Drive, when he stated people were mostly moving out because the electricity had been shut off for about a month. The lock on the basement door had been knocked off and, after he entered, he pushed the door shut and started into a little room when he heard someone say, "Hold it," and felt something cold against the back of his neck. Thereafter, the officers searched him and his room, and Officer Jackson then said he recovered a package.

The court denied defendant's petition to quash the arrest and suppress evidence without making any written or oral statement as to its findings.

At trial it was stipulated, subject to cross-examination, that the testimony of Jackson would be the same as on the motion to suppress. Jackson then, on cross-examination, described the basement of the building as follows: "When you first walk into the basement there is like a large room. Then there is a little hallway leading to the room where Mr. Nickson was living at the time." Two young ladies, whose names he did not obtain, were in defendant's room at the time Jackson entered the basement, and when he entered he was about 10 to 15 feet behind defendant. He did not conduct a search of defendant because when he called to him, defendant dropped the Stanback container to the floor and a tinfoil package came out of it. Jackson picked up both, and on looking inside the Stanback container he saw another tinfoil package. Both tinfoils contained a white powder. He knew from his experience as a police officer that narcotics are usually wrapped in tinfoil. He made the arrest after he retrieved the Stanback container. At that point, he told defendant he was under arrest for possession of narcotics.

Defendant, when called upon to testify, stated that the Stanback package belonged to him and, in a colloquy on direct examination, made the following admission:

"Q: Mr. Nickson, on August 23, 1971, were you in possession of any heroin?

A: No.

Q: You see this Stanback package that was previously marked as part of the State's Exhibits?

A: Yes.

Q: Did you ever see that before?

A: Yes.

Q: Where have you seen that before?

A: I had it in my pocket.

Q: Was there any heroin in there?

A: Yes."

After the close of all the evidence, the court found defendant guilty of possession of a controlled substance.

OPINION

Defendant first contends that the motion to quash his arrest and suppress the use as evidence of the heroin, the Stanback container and the tinfoil packages, should have been granted because the informer's reliability was not proved and there being no other showing of probable cause for an arrest without a warrant, his arrest and the search of his person and his room were unlawful.

■■ The validity of an arrest without a warrant depends on whether there was reasonable cause to believe the person to be arrested has committed a criminal offense (*People v. Wright*, 42 Ill.2d 457, 248 N.E.2d 78. See also Ill. Rev. Stat. 1971, ch. 38, par. 107—2(c).) Such reasonable cause may be furnished by an informer of established reliability. *People v. Hampton*, 14 Ill.App.3d 427, 302 N.E.2d 691.

In recent years, the Illinois Supreme Court has reviewed a number of cases concerning the adequacy of the proof of an informer's reliability. Among these are *People v. Wilson*, 45 Ill.2d 581, 262 N.E.2d 441, and *People v. Wright, supra.* In *Wilson*, an informer was considered by the court to be reliable where his information over a number of years had produced many arrests and a number of convictions. In that case, the informer had also purchased narcotics from defendant and informed the police of the area in which defendant conducted his activities. In *Wright*, an informer gave a description of defendant and said he was in a specified restaurant with narcotics in his possession. Defendant was subsequently arrested in the restaurant and a search of his person revealed the narcotics. The court held that evidence of 14 arrests and 10 convictions from information previously provided, together with the accurate description given, adequately established the informer's reliability.

Defendant urges that *People v. McClellan*, 34 Ill.2d 572, 218 N.E.2d 97, is controlling. In *McClellan*, an addict approached a stopped police car and, as defendant passed the car and entered a restaurant, the addict stated, "That dude is dirty." The officers entered the restaurant, questioned defendant, arrested him, and then found heroin in his coat pocket. An officer testified the addict had furnished information on three prior occasions which resulted in arrests. The court held that to establish the reliability of the informer, the accuracy of his prior information should have been shown and, where the only testimony in this regard was that arrests had resulted, there was an insufficient showing of such accuracy.

The question of an informer's reliability should be determined on a case-to-case basis and, in this regard, we note Officer Jackson's testimony that information was given by the informer on four different occasions

with narcotics recovered and arrests made in each instance. One of these arrests resulted in a conviction, with cases pending against the others, and he testified he would, if required, provide the names of those four persons. We note also that the informer initially told the officers where defendant conducted his narcotics activity and that it was in this area that he eventually pointed out defendant. In addition, he informed the officers that defendant still had heroin in his possession which he carried in a Stanback container.

■■ It was for the trial judge to determine the credibility of Officer Jackson, as well as the other witnesses, and then to decide if the acceptable facts justified police reliance on the informer. (*People v. McCray*, 33 Ill.2d 66, 210 N.E.2d 161, *aff'd*, 386 U.S. 300, 18 L.Ed.2d 62, 87 S.Ct. 1056.) We believe that the facts here are distinguishable from those in *McClellan*, relied upon by defendant, and are more closely aligned with *Wilson* and *Wright*, and we find no reason to overturn the trial court's favorable determination of the credibility of Officer Jackson. The reliability of the informer having thus been established, we hold that he furnished reasonable grounds for defendant's arrest.

Having so determined, it would make no difference whether the arrest occurred as argued by defendant, at the time the officers entered the basement and announced their office, one with gun drawn, or, as the State contends, after the tinfoil package fell from the Stanback container dropped by defendant. Furthermore, we believe that the evidence showed that the arrest did not take place in defendant's dwelling or room, as suggested by defendant, but that it occurred in a common area in the basement. Officer Jackson testified he and Officer Mitchell were 10 to 15 feet behind defendant as they followed him through an open door to a common area in the basement of the building and that the arrest and search took place there. Officer Mitchell's testimony differed only in that he said defendant pushed the door shut behind him. Defendant stated people were moving out of the building, because the electricity had been shut off for a month prior thereto, and that he lived in a small room off the basement of the four-story building. He stated there was no lock on the basement door but that he pushed the door shut and had just "started in the little room" when Officer Jackson said to hold it.

■■ Moreover, as we view the testimony of defendant, the package of heroin was obtained from a search after his arrest. Officer Mitchell was not asked and made no statement concerning the recovery of the Stanback container and tinfoil packages, and Officer Jackson stated that the heroin was obtained not from a search but as a result of defendant dropping the container to the floor. In any event, the search was incident

to a lawful arrest. Such a search is an exception to the Fourth Amendment requirement of a warrant. *United States v. Robinson*, 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467. See also Ill. Rev. Stat. 1971, ch. 38, par. 108—1.

In view of the foregoing, we are of the opinion that the trial court properly denied the motion to quash defendant's arrest and to suppress the use of the heroin as evidence.

Defendant next argues that the informer should have been required to appear at the hearing on the motion to quash and suppress because of alleged inconsistencies in the testimony of the police officers, which he contends created a situation which comes within the special circumstances rule of *People v. Clifton*, 42 Ill.2d 526, 250 N.E.2d 649. We disagree. In *Clifton*, there were unusual circumstances which raised a doubt in the mind of the trial judge, and the supreme court held that the trial judge properly ordered that the informer be produced to dispel that doubt.

Neither the alleged testimony inconsistencies nor any other special circumstances appeared to have created any doubt in the mind of the trial judge here. We believe that *People v. Hampton, supra,* is controlling. There, the court stated at page 435:

> "[W]here the issue is not one of guilt or innocence but, as here, a question of probable cause for arrest, the police need not disclose the informant's identity if the trial judge is convinced that the police relied in good faith upon credible information supplied by a reliable informant."

Here also, the question was one of probable cause for arrest, and we believe the trial judge was justified in finding that the officers had placed good faith reliance upon the information supplied by the informer. Thus, it was not necessary that the informer be required to appear at the hearing.

We turn now to the contention of the defendant that the trial court acted contrary to the law in failing to state his findings of fact and conclusions of law when he denied defendant's motion to quash and suppress. It is true that section 114—12(e) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 114—12(e) provides that the order denying or granting a motion to suppress shall state the findings of fact and conclusions of law upon which the order is based. However, in *People v. Sullivan*, 7 Ill.App.3d 417, 287 N.E.2d 513, it was held that while it is preferable that there be such findings and conclusions, their absence does not require a reversal if it can fairly be said that the record and evidence would sustain the ruling of the trial court,

notwithstanding the absence of such findings. At page 421, the court stated:

"The trial court in denying the motion to suppress obviously based its ruling upon his finding of a lawful arrest."

In *People v. Haskell*, 41 Ill.2d 25, 241 N.E.2d 430, the court stated at page 30:

"[H]is denial of the motion to suppress implies that he must have discredited the testimony of the defense witnesses since that testimony demands a contrary ruling on the motion. [Citation.] It follows that we are bound to accept the testimony given by the police detectives as true because it cannot be said that it is clearly unreasonable."

In the case at bar, defendant's motion was predicated on the ground that the officers acted without probable cause in arresting and searching him. At the hearing, defendant testified that the officers searched him and the room. There was testimony by Jackson that he searched the basement and by Mitchell that he searched defendant. The briefs do not inform us nor are we able to determine from the record whether anything was obtained from any of these searches. The trial court evidently, and we believe justifiably, considered Jackson's testimony, that the Stanback container was seized when it was dropped by defendant, to be reasonable.

■■ We have previously found the arrest to be lawful, and we hold that under the circumstances here, there is sufficient basis in the record to sustain the trial court's order denying defendant's motion to quash and suppress, notwithstanding the fact that the court did not state its findings of fact and conclusions of law.

■■ We turn now to the contention of defendant that the State did not sufficiently establish as a matter of law that the substance recovered was a narcotic. In this regard, we note that the prosecutor stated on the record the parties had stipulated that the substance and containers identified as an exhibit were the same substance and containers delivered to the crime laboratory by Officer Jackson. The record discloses that defense counsel stipulated to this statement. The prosecutor then continued to state on the record a further stipulation that the police chemist, if called, would testify that the substance in the exhibit contained 3.6 grams of heroin. Defendant's counsel did not indicate whether or not he agreed thereto, and defendant now contends that this statement of the prosecutor was self-serving and insufficient to establish that the substance was in fact an unlawful narcotic. We disagree. We note that defense counsel made no comment as to this statement, nor did he make

any objection or motion to strike when it was read into the record, and he indicated his agreement with the entire stipulation by providing the age of defendant to complete a portion of the stipulation as follows:

"Finally, it would be stipulated that the defendant is of the age of?

Mr. Schwartz (defense counsel): Fifty-five.

Mr. Romano (prosecutor): Fifty-five years old."

Immediately thereafter, the substance and the containers were offered and received in evidence without objection. Under those circumstances we believe that the trial court properly considered the findings of the police chemist, and the failure on the part of defense counsel to object to the statement of the prosecutor concerning those findings had the effect of waiving any error. (*People v. Dukett*, 56 Ill.2d 432, 308 N.E.2d 590.) Moreover, at the trial defendant admitted that the Stanback container, one of the exhibits admitted into evidence, was in his pocket on the day of the arrest and that it contained heroin. In view thereof, we believe that there was a proper showing that the substance recovered contained heroin.

■■ Finally, defendant asserts that he was not proved guilty beyond a reasonable doubt. He argues that the police officers' testimony was contradictory in that (1) Jackson stated that the alleged street meeting with the informer occurred around 2 P.M. or 2:30 P.M.; whereas, Mitchell testified it was at 11:45 A.M. and that they drove around with the informer from that time until 2:30 P.M., when the informer pointed out defendant; (2) Jackson stated that after they saw defendant, the officers drove the informer a short distance away, where he alighted from the car; whereas, Mitchell testified the informer left the car when he observed defendant; (3) Jackson stated defendant entered the building from the side; whereas, Mitchell testified that defendant turned into a gangway; (4) Jackson stated the basement door was open; whereas, Mitchell testified defendant pushed the door shut behind him; and (5) Jackson stated that after announcing his office and calling out, "Greasy Bob", defendant dropped a package to the ground; whereas, Mitchell testified that he announced his office and then conducted a search of defendant. The consideration of contradictory testimony and determination of credibility of witnesses and the weight to be accorded their evidence are matters for the trier of fact, and a reviewing court will not disturb a trial judge's finding except where the evidence is so unsatisfactory as to raise a reasonable doubt as to defendant's guilt. (*People v. Thomas*, 127 Ill.App.2d 444, 262 N.E.2d 495.) We have heretofore noted that on direct examination, defendant admitted carrying the Stanback container which was received in evidence, and he admitted that

it contained heroin. It was this package that Jackson testified he saw fall from defendant's hand to the ground. Taking into consideration all of the facts here, we believe that the discrepancies in the officers' testimony are not so grave as to raise a reasonable doubt as to defendant's guilt.

For the reasons above stated, the judgment is affirmed.

Affirmed.                      .

BARRETT and DRUCKER, JJ., concur.